Jenain Joseph SIMMONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00142–CR.

Court of Appeals of Texas, Texarkana.

Submitted July 2, 2002.

Decided Jan. 27, 2003.

Rehearing Overruled Feb. 25, 2003.

Lew Dunn, Longview, for appellant.

William M. Jennings, Gregg County District Attorney, Andy Porter, Assistant District Attorney, Longview, for appellee.

Before ROSS, CORNELIUS * and GRANT,** JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

Jenain Joseph Simmons appeals from his conviction for possession of a controlled substance with intent to deliver. The jury assessed punishment at seventy-five years'

imprisonment and a fine of $150,000.00. On appeal, Simmons brings these issues:

(1) The trial court erred in overruling his motion to suppress evidence of the controlled substance;

(2) The evidence is legally and factually insufficient to support his conviction;

(3) The trial court erred by admitting evidence with a flawed chain of custody;

(4) The State failed to preserve evidence favorable to Simmons;

(5) The trial court committed fundamental error by allowing the prosecution to argue for a conviction based on evidence that was not before the jury;

(6) The trial court committed reversible error by refusing to allow Simmons' trial attorney to question the State's witnesses concerning outstanding warrants for Simmons' arrest, as well as failing to allow Simmons' trial attorney to discuss the outstanding warrants during closing argument; and

(7) The trial court erred in overruling his objection to the court's charge regarding punishment.

On the morning of January 25, 2001, Officer Bob Powell was patrolling Interstate 20 in Gregg County between Longview and Kilgore. Using a stationary radar gun, he checked a vehicle, in which Simmons was a passenger, being driven seventy-six miles per hour in a seventy-mile-per-hour zone. Further, Powell testified he saw the driver of the same vehicle following too closely behind another vehicle. Powell began to follow the vehicle and observed the passenger was not wearing a seat belt. After following the vehicle for about a mile, Powell initiated the traffic stop. When the driver stopped the car, Simmons got out of the vehicle and ran into the adjacent woods. Powell testified

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

** Ben Z. Grant, Justice, Retired, Sitting by Assignment.

that Simmons was carrying what looked like a large white bag. Subsequently, officers brought a dog in to assist in the search for Simmons and found, buried under a pile of leaves, a white Wendy's restaurant bag that matched the description of the bag Powell saw Simmons carrying. The bag contained 1,000 grams of cocaine. A second Wendy's bag, which contained food, was also found fifty to eighty yards from the first Wendy's bag. Powell testified that the officers did not collect the second Wendy's bag because it did not contain any relevant evidence. Police later arrested Simmons in the same wooded area where they discovered both Wendy's bags, and Powell testified that Simmons was the same person he saw flee from the car. The police crime laboratory identified two of Simmons' fingerprints on the Wendy's bag.

At trial, Powell testified that, on finding the Wendy's bag, he immediately gave it to Trooper Chris Baggett to keep until the search had concluded. Baggett testified that he was wearing gloves when he received the bag, that he locked the bag in his patrol unit, that he in no way altered or changed the contents of the bag while it was in his possession, and that he returned the bag to Powell later that same morning. Powell testified that, after he regained custody of the bag, he placed it in his personal evidence locker. The Wendy's bag contained another plastic bag, which in turn contained three zippered baggies full of cocaine. Powell testified that he removed the Wendy's bag and its contents from his evidence locker and, along with Detective Bobby Gibbons, took it to the Smith County Sheriff's Department to check for fingerprints. Officer Cecil Cox, who was responsible for the fingerprint analysis, testified that Powell delivered a white cardboard box containing a "Wendy's hamburger bag which contained some plastic grocery type bag and some sand-

wich bags with an off white substance suspected to be cocaine." Cox testified that he and his partner initialed the Wendy's bag and they did not tamper with or alter the cocaine. Cox testified they were unable to obtain fingerprints from the zippered baggies, but they were able to pull two of Simmons' fingerprints from the Wendy's bag. Subsequently, Cox returned the zippered baggies to Powell and retained the Wendy's bag for further testing. Powell testified he then initialed the zippered baggies, placed them in a large brown paper sack, which he also initialed, and delivered them to the Department of Public Safety (DPS) crime laboratory in Tyler for testing to determine if the substance was cocaine. Once the substance was positively identified as cocaine, Powell retrieved the bags and delivered them to the assistant district attorney's office.

 In his first point of error, Simmons contends the trial court erred by overruling his motion to suppress based on the officer's lack of reasonable suspicion to effect the traffic stop. The ruling of a trial court on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Jackson v. Texas*, 968 S.W.2d 495, 498 (Tex.App.-Texarkana 1998, pet. ref'd). On a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses, including the weight to be given their testimony. *Allridge v. State*, 850 S.W.2d 471, 482 (Tex.Crim.App.1991). Thus, the trial court is free to believe or disbelieve the testimony of any witness. We do not engage in our own factual review. *Braggs v. State*, 951 S.W.2d 877, 880 (Tex.App.-Texarkana 1997, pet. ref'd). Viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts.

*Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). If the court's findings are supported by the record, we are not at liberty to disturb them. *Etheridge v. State,* 903 S.W.2d 1 (Tex.Crim.App.1994).

■ An officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, based on articulable facts, that the person detained is, has been, or soon may be, engaged in criminal conduct. *Tex. Dep't of Pub. Safety v. Chang,* 994 S.W.2d 875 (Tex.App.-Austin 1999, no pet.).

■ In order to show a valid traffic stop, the State is not required to show that a traffic offense was actually committed, but it must show that the officer reasonably believed a violation was in progress. *Valencia v. State,* 820 S.W.2d 397, 400 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). We must therefore determine (1) the existence of a law, and (2) the objective reasonableness of the traffic stop.

The Texas Transportation Code makes it a violation for a person to operate a vehicle at a speed greater than seventy miles per hour in the daytime on a highway numbered by this State or the United States outside an urban district. Tex. Transp. Code Ann. § 545.352(b)(2) (Vernon Supp.2003). The Texas Transportation Code also makes it a violation for an individual over the age of fourteen, riding in the front seat of a vehicle, to fail to wear a safety belt. Tex. Transp. Code Ann. § 545.413 (Vernon Supp.2003). Additionally, the Code provides in pertinent part:

An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

Tex. Transp. Code Ann. § 545.062 (Vernon 1999).

Officer Powell testified that, using a stationary radar gun, he checked a vehicle, in which Simmons was a passenger, being driven seventy-six miles per hour in a seventy-mile-per-hour zone. Further, Powell testified that he saw the driver of the same vehicle following too closely behind another vehicle and that he observed Simmons not wearing his seat belt. As a result of the articulated facts observed at the time of the stop, an officer had reasonable suspicion sufficient to initiate a valid traffic stop.

■ In his next point, Simmons contends the evidence is legally and factually insufficient to support the conviction. When there is a challenge to both the legal and factual sufficiency of the evidence, we first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim.App.1996); *Hines v. State,* 978 S.W.2d 169, 172 (Tex.App.-Texarkana 1998, no pet.). The proper standard of review to determine legal sufficiency is whether the evidence supports the verdict when viewed in a light most favorable to the verdict. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In other words, if any reasonable trier of fact could find from the evidence the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Clewis v. State,* 922 S.W.2d at 134.

■ First, Simmons contends the evidence was legally insufficient to prove he had the intent to deliver the cocaine. In *Bryant v. State,* 997 S.W.2d 673 (Tex.App.-Texarkana 1999, no pet.), we held that the evidence presented at trial was legally sufficient to support the appellant's conviction

of possession of cocaine with intent to deliver. We also held that circumstantial evidence and expert testimony were sufficient to show an intent to deliver. *Id.; Smith v. State*, 737 S.W.2d 933, 941 (Tex. App.-Dallas 1987, pet. ref'd). Bryant was arrested with a total of 8.42 grams of cocaine, divided into sixty-three individual bags. *Bryant v. State*, 997 S.W.2d at 675. The State elicited expert testimony from a DPS narcotics officer, who testified that, based on his experience, the cocaine was intended for sale and distribution. Consequently, based on the expert testimony and the amount of drugs recovered, a rational juror could have found the element of intent to deliver beyond a reasonable doubt.

In this case, Officer Gibbons testified that, based on his experience in over 1,000 narcotics cases, the 1,000 grams of cocaine possessed by Simmons was "most definitely not for personal use. [But was] for sale." As in *Bryant*, based on the amount of drugs recovered and the testimony of Gibbons, a reasonable juror could have found that Simmons had the intent to deliver the cocaine. Thus, the State presented legally sufficient evidence to prove intent to deliver. *Clewis v. State*, 922 S.W.2d at 134.

■ Simmons also contends the evidence is legally insufficient to prove the element of knowing possession. In order to prove knowing possession, the State must show the following: "(1) that [the appellant] exercised actual care, control, or custody of the substance, (2) that he was conscious of his connection with it, and (3) that he possessed the substance knowingly or intentionally." *Stroman v. State*, 69 S.W.3d 325, 328 (Tex.App.-Texarkana 2002, pet. ref'd). The evidence used to satisfy these elements may be in the form of direct or circumstantial evidence. *Id.; Brown v. State*, 911 S.W.2d 744, 747 (Tex.

Crim.App.1995). However, if the illegal substance is not found on the person of the accused, the State must present additional facts that will affirmatively link the accused with the substance. *Stroman v. State*, 69 S.W.3d at 328.

When determining whether facts and circumstances affirmatively link the accused to the contraband, the following nonexclusive factors may be considered:

(1) whether the accused was present when the search was conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when arrested; (5) whether the accused possessed other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether he made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; and (12) whether the place the drugs were found was enclosed.

The State produced testimonial and physical evidence to affirmatively link Simmons with the cocaine in several respects. Specifically, Officer Powell testified that, after stopping the vehicle, Simmons fled into the adjacent woods. Powell testified that Simmons was carrying a large white bag. While searching the area, the officers found a white Wendy's bag that matched the description of the bag Powell had seen Simmons carrying. The bag contained 1,000 grams of cocaine. Powell testified that the bag was buried underneath a pile of leaves. Because Simmons fled the scene and had gone to such great lengths

to conceal the bag, the jury could infer that he was conscious of his connection with the bag and its contents. Officers later arrested Simmons in the same wooded area where the cocaine was discovered, and Powell testified that Simmons was the same individual he saw flee the traffic stop with the white Wendy's bag in his possession. Further, the State produced expert testimony that Simmons' fingerprints were found on the Wendy's bag. Based on the foregoing evidence, a reasonable juror could have found beyond a reasonable doubt that Simmons had knowing possession of the cocaine.

■■■■■■ In contrast to a legal sufficiency review, a factual sufficiency review requires us to view the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d at 7. We view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Further, we set aside the verdict for factual insufficiency only if (1) the evidence in support of a vital fact, considered as standing alone, is factually too weak to support it, or (2) looking at all the evidence, some evidence supports a positive inference and some supports a negative inference, but the State's evidence is so weak as to make the finding against the great weight and preponderance of the evidence. *Goodman v. State*, 66 S.W.3d 283 (Tex.Crim.App.2001).

In response to the State's evidence on knowing possession and intent to deliver, Simmons elicited testimony from the State's expert that fingerprints were not found on the zippered baggies that actually contained the cocaine, but only on the Wendy's bag that contained the zippered baggies. Simmons contends that, without his fingerprints on the zippered baggies, the State's evidence was factually insufficient to prove knowing possession. On the issue of intent to deliver, Simmons elicited testimony from the State's expert that he could have been transporting the cocaine for a third party, rather than selling it himself. While this testimony may raise doubts, it does not render the jury's verdict against the great weight and preponderance of the evidence.

■■■■■■ In his next point of error, Simmons contends the trial court erred by admitting the cocaine into evidence because the State failed to establish the chain of custody. However, to preserve error for appellate review, the complaining party must make a timely, specific objection. *Armstrong v. State*, 718 S.W.2d 686, 699 (Tex.Crim.App.1985) (op. on reh'g). The complaining party must obtain an adverse ruling from the trial court, *DeRusse v. State*, 579 S.W.2d 224 (Tex.Crim.App. [Panel Op.] 1979), and the point of error on appeal must correspond or comport with the objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex.Crim.App. 1999); *Thomas v. State*, 723 S.W.2d 696 (Tex.Crim.App.1986).

The State contends that Simmons failed to preserve error regarding the chain of custody. Before we address the State's argument, a brief review of the testimony concerning the zippered baggies is necessary. Officer Powell testified that, after finding the Wendy's bag containing the cocaine, he immediately gave it to Trooper Baggett to keep until the search for Simmons had concluded. Baggett testified that he was wearing gloves when he received the bag from Powell, that he locked the bag in his patrol unit, that he in no way altered or changed the contents of the bag while it was in his possession, and that he returned the bag to Powell later that same morning. Powell testified that, after he regained custody of the bag, he placed it in his personal evidence locker.

The Wendy's bag contained another plastic bag, which in turn contained three zippered baggies full of cocaine. Powell testified that he removed the Wendy's bag and its contents from his evidence locker and that he and Detective Gibbons transported it to the Smith County Sheriff's Department for fingerprint analysis. Detective Cox, the person responsible for the fingerprint analysis, testified that Powell delivered to him in a white cardboard box a "Wendy's hamburger bag which contained some plastic grocery type bag and some sandwich bags with an off white substance suspected to be cocaine." Detective Cox testified that he and his partner initialed the Wendy's bag to show it was in their custody and that he did not tamper with or alter the cocaine. Cox testified he was unable to obtain fingerprints from the zippered baggies, but they were able to obtain Simmons' fingerprints from the Wendy's bag. Subsequently, Cox returned the zippered baggies to Powell and retained the Wendy's bag for further testing. At that point, Powell initialed the zippered baggies, placed them in a large brown paper sack, which he also initialed, and delivered them to the DPS crime laboratory in Tyler.

When the State offered the zippered baggies into evidence, Simmons' trial attorney made the following objection: "Well, we're going to object to it your Honor. I believe that is not how the testimony was from the trooper as to how they transported that over there." Evidently, because Powell testified before Cox, Simmons' trial counsel was under the impression that Powell had delivered the bags to Cox in a large grocery sack; however, Powell was never asked how the bags were delivered to Cox, only how they were delivered to the crime laboratory in Tyler. Accordingly, the State's expert witness from the crime laboratory in Tyler testified that, when he received the bags, they were in a brown paper sack (the same sack in which Powell testified he delivered them). Therefore, Simmons' objection was a misstatement of the testimony, and the trial court overruled the objection and admitted the cocaine into evidence.

Based on the foregoing, the State contends that nothing has been preserved for appellate review. An objection is sufficient to preserve error for appellate review if it communicates to the trial court what the objecting party wants, why the objecting party thinks himself entitled to relief, and does so in a manner clear enough for the court to understand the objection at a time when it is in a position to do something about it. *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim. App.1992). But when it appears from the context that a party failed to fairly and effectively communicate to the trial court the objection, its basis, or the relief sought, the appellant's complaint has not been preserved. *Id.*

Simmons' counsel did not mention the failure to lay a predicate or complain about the adequacy of the chain of custody in his objection. At best, the trial court could have inferred that the chain of custody was the basis for the objection, even though there is nothing in the record to indicate that such an inference was made. Consequently, because counsel failed to clearly notify the trial court of what he wanted and why he was entitled to it, his right to complain on appeal has been waived.[1] *See* TEX.R.APP. P. 33.1.

---

1. In the alternative, even if Simmons properly preserved error, we have reviewed the record in its entirety and do not find that the trial court abused its discretion or committed reversible error.

In his next point, Simmons contends the officers violated his state and federal constitutional rights by their failure to collect and preserve the second Wendy's bag. When the State fails to preserve evidence that is only potentially useful to the defense, the appellant must show that the State acted in bad faith and that the evidence is material and favorable in order to succeed on a due process claim. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Nastu v. State*, 589 S.W.2d 434, 441(Tex.Crim.App. [Panel Op.] 1979). A showing that the lost evidence may or may not have been favorable does not meet the materiality standard. There must be an affirmative showing that the evidence was favorable and material. *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Stone v. State*, 583 S.W.2d 410, 415 (Tex.Crim.App. [Panel Op.] 1979); *Hernandez v. State*, 867 S.W.2d 900, 908 (Tex.App.-Texarkana 1993, no pet.); *Hebert v. State*, 836 S.W.2d 252, 254 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

Powell testified the second bag was found approximately fifty to eighty yards from the first Wendy's bag. Further, Powell testified the reason the second bag was not collected was because it did not contain any relevant evidence. Simmons suggests that the police may have switched the bags and put the cocaine in the first bag because it was more likely to have his fingerprints on it, but this is nothing more than rank speculation, supported by no evidence whatsoever. It could just as easily be speculated that Simmons had both bags, and when hiding from the police, he hid the first bag containing the cocaine, while leaving the second bag, which contained no contraband, as a decoy plainly visible in the open so the officers would think it was the bag Powell saw in Simmons' possession when he fled from the car. At any rate, Simmons' rights were not violated when the police decided not to preserve the second bag that contained no evidence.

Moreover, Simmons has failed to meet the test set out above. He has not produced any evidence of bad faith or that the missing bag was material and favorable to his case. *Arizona v. Youngblood*, 488 U.S. at 58, 109 S.Ct. 333; *Stevens v. State*, 900 S.W.2d 348, 352 (Tex.App.-Texarkana 1995, pet. ref'd). Therefore, the officers' failure to preserve the second bag did not constitute a denial of due process.

In his next point, Simmons contends the trial court fundamentally erred in allowing the prosecution to make an erroneous jury argument. Before an appellant will be permitted to complain on appeal about an erroneous jury argument, he must show that he timely and properly objected to the argument and pursued his objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). Specific objections are required so the trial court will have an opportunity to rule and opposing counsel will have an opportunity to correct any error.

Simmons contends the following statement made by the State during closing argument constitutes fundamental error because the statement references contents of the second bag, which is not in evidence, and Simmons' refusal to testify:

They sat there and they made an issue about why didn't you get the food sack. Why didn't he bury it. He knew the same as the police did. The purpose of the sacks was not whether or not we take both of them. The purpose was what sack contained physical evidence that would show that this defendant possessed this cocaine, and if he knows that that other sack contains food as well as

the officers there is no dope in it then you don't need to take it.

Formerly, an appellant could complain of unobjected to improper argument if the argument was so egregious that the harm from it could not be cured by an instruction to the jury to disregard it. This rule is no longer viable, and the cases applying it have been expressly overruled by the Texas Court of Criminal Appeals. *Cockrell v. State*, 933 S.W.2d at 89. Because Simmons did not object to the argument, he has waived any error.

■ In his next point of error, Simmons contends the trial court erred by refusing to allow testimony from Officer Powell concerning Simmons' outstanding warrants. Specifically, Simmons complains the following testimony amounted to reversible error:

Q [APPELLANT'S COUNSEL]: And you of course have done a follow up investigation on just who Mr. Simmons is?

A [OFFICER POWELL]: Yes, sir.

Q As a result of your investigation you became aware that at the time you made the track [sic] stop Mr. Simmons had a warrant out for his arrest. You had an outstanding arrest warrant?

A I had no idea he had a warrant.

Q He didn't?

A Does he?

Q He didn't tell you that?

A Mr. Simmons?

Q Yes.

[PROSECUTOR]: Your Honor, I object to going back into what the defendant said.

THE COURT: I'll sustain.

Under Texas Rule of Evidence 103, error may not be predicated on a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was presented to the court by offer. TEX.R. EVID. 103; *see Ricketts v. State*, 89 S.W.3d 312 (Tex.App.-Fort Worth, 2002, no pet. h.). In the present case, Simmons failed to produce the testimony complained of by way of offer of proof. Absent a showing of what the testimony might have been, Simmons has presented nothing for appellate review. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex.Crim.App.1999).

■ Simmons further contends the trial court erred in refusing to allow him to argue to the jury that he ran from Officer Powell because he had outstanding warrants against him.

■ It is well established that the scope of closing argument is limited to the facts and issues raised by the case and the evidence admitted at trial. *Sanders v. St. Paul Fire & Marine Ins. Co.*, 429 S.W.2d 516, 525 (Tex.Civ.App.-Texarkana 1968, writ ref'd n.r.e.); *Ramirez v. Acker*, 134 Tex. 647, 138 S.W.2d 1054 (1940). Here, there was no evidence admitted about outstanding warrants. Because there was no evidence of outstanding warrants admitted at trial, the trial court did not abuse its discretion by precluding Simmons from inserting a discussion of outstanding arrest warrants in his jury argument.

■ Finally, Simmons contends it was error for the trial court to give the jury charge mandated by TEX.CODE CRIM. PROC. ANN. art. 37.07(4)(b) (Vernon Supp. 2003). The trial court has no discretion to ignore statutory requirements. *McGee v. State*, 711 S.W.2d 257 (Tex.Crim.App. 1986). In a felony case where the punishment is to be assessed by the jury and the maximum term of imprisonment that may be imposed is longer than sixty years, the Texas Code of Criminal Procedure expressly provides that the court shall charge the jury in the following manner:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole. Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant. TEX.CODE CRIM. PROC. ANN. art. 37.07(4)(b).

Simmons contends that the above charge resulted in error because it "in-vite[d] the jury to 'manipulate the sentence' by determining how many years the Appellant would serve and then quadrupling that number." However, in 1989, the Texas Constitution was amended to allow the legislature to enact laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense. TEX. CONST. art. IV, § 11(a).

In support of his contention that the above charge resulted in error, Simmons argues that, because the jury sent out a note asking for clarification on the difference between life imprisonment and ninety-nine years, the jury was improperly influenced by the charge. Simmons did not file a motion for new trial alleging juror misconduct or seek a hearing to adduce facts not in the record. The only evidence that the jury considered parole or good conduct time is the jury note. Even if the note constitutes evidence the jury discussed these matters at a preliminary point, we presume the jury followed the court's instructions and, thereafter, did not consider these matters in reaching their verdict. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex.Crim.App.1998). Further, the jury was expressly instructed not to consider the extent to which good conduct time may be awarded to or forfeited by the particular defendant here. *Edwards v. State*, 807 S.W.2d 338, 341 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd). In light of the above, Simmons has failed to show that error occurred with regard to the charge.

For the reasons stated, we affirm the judgment.