IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00191-CR

 

Joao F. Rodrigues,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the County Court at Law No.
2

Johnson County, Texas

Trial Court No. M200400717

 



MEMORANDUM  Opinion



 

A jury convicted Appellant Joao Rodrigues of assault. 
See Tex. Pen. Code Ann. §
22.01(a)(1) (Vernon 2003).  The trial court sentenced him to one year in jail,
probated for one year, and imposed a $600 fine.  We will affirm.

Sufficiency of the Evidence

          Rodrigues’s first two issues challenge
the legal[1]
and factual sufficiency of the evidence.  When reviewing a challenge to the
legal sufficiency of the evidence to establish the elements of the penal
offense, we must determine whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  The standard is the same for both direct and circumstantial evidence
cases.  Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

We do not resolve any conflict of fact or assign
credibility to the witnesses, as this was the function of the trier of the
fact.  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is to determine
if the findings of the trier of fact are rational by viewing all of the
evidence admitted at trial in the light most favorable to the verdict.  Adelman,
828 S.W.2d at 422.  In so doing, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

In a factual-sufficiency review, we view all of the evidence in
a neutral light and consider only whether a jury was rationally justified in
finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004).  However, there are two ways in which the
evidence may be insufficient.  Id.  First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt.  Id.  Second, there may be both evidence
supporting the verdict and evidence contrary to the verdict.  Id. 
Weighing all the evidence under this balancing scale, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so the guilty verdict should not stand.  Id. at 485.  This
standard acknowledges that evidence of guilt can preponderate in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.  Id.  Stated another way, evidence supporting guilt
can outweigh the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.  Id.

Zuniga also reminds us that we must defer to the jury’s
determination.  See id. at 481. (citing Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997)).  The jury determines the credibility of the
witnesses and may “believe all, some, or none of the testimony.”  Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  It is the jury that
accepts or rejects reasonably equal competing theories of a case.  Goodman
v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).  The evidence
is not factually insufficient merely because the factfinder resolved conflicting
views of evidence in favor of the State.  Cain, 958 S.W.2d at 410.

The
Evidence

 








          Rodrigues and David Whiting, the
victim, had been good friends for ten years.  When Cheryl, Rodrigues’s wife,
wanted to separate, she told Rodrigues to move out.  He temporarily moved in
with Whiting for a week and stored some of his personal property (including Rodrigues’s
guns and a refrigerator belonging to Arlan Hall, a friend of Rodrigues) in
Whiting’s garage.

Soon after the separation, Cheryl began talking
to and seeking comfort from Whiting, which caused friction between Rodrigues
and Whiting, and Rodrigues began to suspect that Cheryl was secretly seeing
Whiting.  After Rodrigues had seen Whiting at Cheryl’s divorce attorney’s
office, Rodrigues went directly to Cheryl’s place of work and told her that he
was going to “take out” Whiting.  Whiting said that Rodrigues was also upset
that Whiting had delivered the guns to the attorney ad litem for Rodrigues’s
son.

On the day in question (about two months after
the separation), Rodrigues claimed that he wanted to get his property from
Whiting’s garage, and Cheryl agreed to assist him.  Because he thought that
Whiting would not come to the door for him, Rodrigues got Cheryl to go to
Whiting’s house in another car with Hall so that she could go up to Whiting’s
door and get him outside.  Rodrigues followed them in Hall’s car.  Cheryl asked
Whiting to step outside to talk to Hall about his refrigerator, and Rodrigues
drove around the corner in Hall’s car.

Both Whiting and Cheryl testified that Rodrigues
approached Whiting, who told him several times to leave and to not come onto
Whiting’s property.  Cheryl said that Rodrigues became upset.  Rodrigues ignored
Whiting’s demands, and approached him, causing Whiting to back toward his front
door.  Rodrigues then hit Whiting three times in the face.  Whiting grabbed
Rodrigues so that he couldn’t hit him, and Whiting fell to the ground. 
Rodrigues then began kicking Whiting, and Cheryl unsuccessfully tried to pull
Rodrigues away.  After Whiting got back up, Rodrigues then pushed him into an
iron gate and left.

Whiting called the police and reported the
assault.  Cheryl said that Rodrigues forced her to go to the police and make a
statement that Whiting was the aggressor and had jumped on Rodrigues.  She made
this statement because she feared that Rodrigues would take their son to Portugal and that she would never see him again.  Three days later, Cheryl secretly went
back to the police and made a second written statement that corresponded with
her trial testimony.

Rodrigues’s version was that he went to
Whiting’s only to get his property out of the garage, and he denied that there
was a ploy to get Whiting outside.  Rodrigues told Whiting twice that he wanted
his property, and as he walked toward the garage, Whiting twice told Rodrigues
to leave, telling him he couldn’t have the property.  After the second time,
Rodrigues turned around and began to walk away, at which time Whiting grabbed
him by the neck from behind.  Rodrigues hit Whiting in the face with his elbow
to break loose.  Whiting then grabbed Rodrigues’s shirt and scratched his neck,
and in response Rodrigues shoved Whiting in the face with the palm of his hand. 
Rodrigues said that Whiting attacked him and that he acted in self-defense. 
The jury was given an instruction on self-defense.

Rodrigues denied forcing Cheryl to make her
first police statement and denied threatening to take their son to Portugal.

Legal Sufficiency

Considering all of the evidence in the light
most favorable to the verdict, the jury could rationally have found beyond a
reasonable doubt that Rodrigues committed the offense of assault.  Jackson,
443 U.S. at 318-19, 99 S.Ct. at 2788-89.  Whiting’s testimony (that Rodrigues
struck, kicked, and injured him) and photographs of his injuries were legally
sufficient to support a rational finding.  Finding the evidence to be legally
sufficient, we overrule Rodrigues’s first issue.

Factual Sufficiency

Considering all of the evidence in a neutral
light, the jury was rationally justified in finding Rodrigues guilty.  Zuniga,
144 S.W.3d at 484.  The jury was free to reject the defense claim that Whiting
was the aggressor and that Rodrigues acted in self-defense.  See Goodman,
66 S.W.3d at 285; Chambers, 805 S.W.2d at 461.  Whiting testified that Rodrigues assaulted and
injured him.  Cheryl also testified that Rodrigues attacked Whiting without
provocation and that Rodrigues was not acting in self-defense.  Rodrigues said
that Whiting jumped him and that he responded in self-defense.  While Cheryl’s
first statement to the police asserted that Whiting was the aggressor, she
testified that this version was false and that she made it only because
Rodrigues told her to make it.  She explained that she feared that Rodrigues would
take their son to Portugal and that she would never see him again, as he had
previously threatened.  Three days later, she made a second statement to police
that comported with her trial testimony.

The jury was the judge of Cheryl’s credibility. 
We must defer to the jury’s determination of the credibility of the witnesses. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  The evidence
supporting the finding of guilt, considered alone, was not too weak to support
the finding beyond a reasonable doubt, and the contrary evidence was not so
strong that guilt could not be proved beyond a reasonable doubt.  See Zuniga,
144 S.W.3d at 484-85.  We overrule Rodrigues’s second issue.[2]

Exclusion of Custody-Battle Testimony and Jury
Argument

As of the time of trial, Cheryl was living with
Whiting, and they were in a serious relationship.  Rodrigues testified that he
and Cheryl were in a custody battle over their son.  

During cross-examination, Cheryl testified that
a custody proceeding had been filed and that she had had to go to court to get
her son back when Rodrigues had kept their son for five days, in breach of
their custody agreement at the time.  She then added:  “I have been to court so
many times since then.”  Defense counsel then asked her if she had any court
battles pending.  In a bench conference, defense counsel stated that he wanted
to show that Cheryl was currently in a custody battle with Rodrigues and that
he wanted to show her bias.  The trial court allowed defense counsel to ask if
she was in a custody battle with Rodrigues:

Q.      Are you currently in a custody battle
with Joao Rodrigues over your child—your son?

A.               
According to the papers I
have custody of him.

Q.               
Right.

A.               
He had a Temporary
Restraining Order against me but that is it.

 

A short time later, on recross-examination of
Cheryl, the following exchange occurred:

Q.      Ms. Tidwell, do you stand to benefit at
all from a conviction of Joao Rodrigues today?

A.      No.

Q.      You don’t—so this wouldn’t
help in your custody battle?

[PROSECUTOR]:    I will object to the relevance
of that question.

THE COURT:         Sustain the objection.

 

          In his third issue, Rodrigues asserts
that the trial court improperly excluded evidence of Cheryl’s motive and bias
and that his Sixth Amendment confrontation rights were violated.

          To preserve a complaint that the trial
court erroneously excluded evidence, the complaining party must bring forward a
record indicating the nature of the evidence.  See Tex. R. App. P. 33.1, 33.2; Tex. R. Evid. 103(a)(2).  If the
excluded evidence is not apparent from the context of the record, it must be
brought forward either through a timely offer of proof or a formal bill of
exception.  Id.; Shafer v. State, 82 S.W.3d 553, 555 (Tex.
App.—San Antonio 2002, pet. ref’d).  Because Rodrigues did not make a formal
bill of exception or an offer of proof on the substance of the testimony he
wanted to elicit from Cheryl, he has not preserved this issue for our
review.  See Tex. R. App. P.
33.2; Tex. R. Evid. 103(a)(2); Guidry
v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999); Simmons v. State,
100 S.W.3d 484, 495 (Tex. App.—Texarkana 2003, pet. ref’d).  Accordingly,
we overrule his third issue.

          In his related fourth issue, Rodrigues
complains that the trial court erred in sustaining the State’s objection to the
following in his trial counsel’s closing argument:  “Cheryl Tidwell is
currently in a custody battle with Joao Rodrigues.  She potentially stands to
gain from the conviction of Joao Rodrigues.”  Having overruled issue three for
failure to preserve his complaint, we also overrule issue four.  Based on the
trial record, the trial court did not abuse its discretion in sustaining the
State’s objection.

Conclusion

          Having overruled all four issues, we
affirm the judgment.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed November 2, 2005

Do
not publish

[CR25]









    [1]       His
first issue complains that the conviction is “against the great weight and
preponderance of the evidence.”  Based on his argument, we will treat it as a
legal-sufficiency complaint.





    [2]       The defendant bears the initial
burden of producing some evidence to raise self-defense, and once the defense
is raised, the State bears the burden of persuasion to disprove the defense.  In
re S.S., 167 S.W.3d 108, 114 (Tex. App.—Waco 2005, no pet.).  The State
meets its burden of persuasion by proving its case beyond a reasonable doubt
and thus need not produce evidence directly refuting the evidence of the
defense.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); S.S.,
167 S.W.3d at 114.  If there is a reasonable doubt with respect to the
existence of a defense, the accused must be acquitted.  Tex. Pen. Code Ann. § 2.03(d) (Vernon 2003); S.S., 167
S.W.3d at 112.  In other words, the trier of fact must find against the
defendant on the defensive issue beyond a reasonable doubt.  See Sexton v.
State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  Although Rodrigues does
not specifically challenge the jury’s rejection of his defense of self-defense,
we would still find that the jury was free to reject his testimony on
self-defense and that the State disproved self-defense by proving the offense
beyond a reasonable doubt.