In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00044-CR
______________________________


RANDY EARL FORTSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,674


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINON

            Randy Earl Fortson pled not guilty to the offense of assaulting a public servant.


 A jury
found Randy guilty, and the trial court imposed the jury's recommended sentence of eight years'
imprisonment. On appeal, Randy contends the trial court erred by allowing an unqualified police
officer to render opinion evidence. Randy then argues in a single, multifarious point of error, that
the evidence is legally and factually insufficient to support his conviction and that the indictment
failed to charge an essential element of the offense. We affirm.
I.         Allowing Officer Callahan To Opine that Randy Was "High" at the Time of Arrest
            In his first point of error, Randy argues the trial court erred by allowing Officer Vance
Callahan of the Gladewater Police Department to testify that, in Callahan's opinion, Randy was under
the influence of narcotics at the time of his arrest. 
            To preserve an issue for appellate review, the complaining party must make a timely
objection to the evidence sought to be excluded from trial, and the party must pursue that objection
to an adverse ruling. Simmons v. State, 100 S.W.3d 484, 492 (Tex. App.—Texarkana 2003, pet.
ref'd), cert. denied, 541 U.S. 996 (2004). The relevant portion of the reporter's record follows:
            Q.        [Prosecutor] Okay. Officer, have you ever seen a man on drugs?
 
                        [Defense counsel]: Your Honor, I'm going to object to that as
inappropriate at this time and it's -- this officer has no indication he has any expertise
in that area at all.
 
                        THE COURT: Well, I'm going to overrule the objection. 
[Prosecutor], you may ask the background questions.
 
            Q.        [Prosecutor] Have you ever seen men on drugs?
 
            A.        Well, yes, sir, I have.
 
            Q.        How often?
 
            A.        Several times in my history I guess.
 
            Q.        Have you ever seen men that were sprayed [with pepper spray] that
were on drugs?
 
            A.        Yes, sir.
 
            Q.        How many times.
 
            A.        A few I guess. I don't really know.
 
            . . . .     [trial court sustained question as leading]
 
            Q.        Can you tell us the effects of a man on drugs when [he's] sprayed?
 
                        [Defense counsel]: I'm going to object. There's been no expertise
through this officer shown at all.
 
                        [Prosecutor]: Your Honor, the burden is that he have, as you know,
that he has more knowledge than a common person and what we've just shown is that
he has been through this on different occasions and has seen men on drugs on
different occasions and he has more knowledge than a common person in this area
based on his ten years in law enforcement that he's already testified to.
 
            . . . .
 
            Q.        [Prosecutor] You can answer the question.
 
            A.        Go ahead and would you ask it again, please, sir.
 
            Q.        Well, I'll try. 
 
            A.        Right.
 
            Q.        All right. Based on your experience how does a man on drugs react
when [he's] sprayed?
 
            A.        Negative. I mean, they just, no effect on average. Somebody that's,
based on previous experience with some kind of drug or narcotic in their system and
his or their mentality of anger[,] it had no effect -- it has no effect compared to the
average or reasonable person that's been sprayed.
 
            Q.        In this case did you form an opinion whether or not this defendant was
on drugs based on your experience and his behavior?
 
                        [Defense counsel]: We renew our objection as to a lack of expertise,
Your Honor, by this witness.
 
                        THE COURT: I'll overrule the objection.
 
            A.        Ask again, please, sir.
 
            Q.        All right. . . . Based on your experience, ten years in law
enforcement, were you able to form an opinion about whether or not this defendant
was on drugs at the time?
 
                        THE COURT: I tell what you [sic], I'm fixing to reverse myself. I'm
sustaining the objection to this question. I let the other in, but I'm going to sustain
the objection to this question.
 
            Q.        At any point from the time you turned on your lights did this
defendant behave like a law abiding citizen.
 
            A.        No sir.
 
            . . . . 
 
                        [Prosecutor]:   Pass the witness.
 
            Despite Randy's contention to the contrary on appeal, the record clearly shows the trial court
did not allow the officer to opine as to whether he specifically believed Randy was under the
influence of drugs at the time of the offense. Thus, the complained-of error is not apparent from the
face of the record. Moreover, after the trial court sustained Randy's objection, he did not ask the trial
court to instruct the jury to disregard the witness' prior testimony regarding Randy's behavior (which
Randy now asserts was unduly prejudicial). As Randy failed to pursue his objection to an adverse
ruling, and as the trial court granted all relief requested, no alleged error has been preserved for our
review. Accordingly, we overrule Randy's first point of error.
II. Factual and Legal Sufficiency
            In his second point of error, Randy contends the evidence is both legally and factually
insufficient. Randy's point of error is patently multifarious. We have repeatedly discouraged
litigants from combining two or more points of error into a single issue, as it subjects the litigant to
the possibility that the combined issue will be summarily overruled. See, e.g., Harris v. State, 133
S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref'd). Nevertheless, in the interest of
justice, we will decline the opportunity to overrule Randy's point of error as multifarious, and we will
address the issues presented.



            A.        Standards of Review and the Indictment
            The standards of review for legal and factual sufficiency are well settled. See Threadgill v.
State, 146 S.W.3d 654 (Tex. Crim. App. 2004); Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App.
2000); Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996). 
            The indictment in this case alleged Randy
did then and there intentionally, knowingly, or recklessly cause bodily injury to [the
deputy], by striking [the deputy] in the mouth with his fist and knocking him to the
ground and the defendant did then and there know that the said [the deputy] was then
and there a public servant, to wit: an Upshur County Sheriff's Deputy, and that the
said [the deputy] was then and there lawfully discharging an official duty, to wit: 
Upshur County Sheriff's Deputy . . . .
 
            Randy first appears to be arguing that the evidence is insufficient because the deputy could
not have been performing an official duty at the time he attempted to arrest Randy. Randy
alternatively argues the indictment required the State to prove Randy's blow to the deputy's face
caused the deputy to fall to the ground, and, absent such evidence, Randy should be entitled to an
acquittal. We will address his alternative argument first.
            B.        What the Indictment Required
            Contrary to Randy's position on appeal, the language of the indictment did not require the
State to show Randy's blow to the deputy's face caused the deputy to fall to the ground. The
indictment alleged Randy injured the deputy "by striking [the deputy] in the mouth with his fist and
knocking him to the ground . . . ." The indictment clearly alleges two separate acts of violence, as
shown by the employment of the separate adverbial phrases "striking [the deputy] in the mouth" and
"knocking [the deputy] to the ground," to modify the verb "cause." The second adverbial phrase does
not modify, nor does it depend on, the first adverbial phrase to state an offense. We therefore
conclude that the indictment did not require the State to prove that the first alleged act caused the
result of the second alleged act. 
            We now turn to whether the evidence was otherwise legally and factually sufficient to show
the deputy was performing an official duty at the time he was assaulted by Randy.
            C.        Sufficiency of the Evidence
            At trial, Callahan testified he was called to assist in locating an individual accused of assault
who was described as driving a white pickup truck. He observed such a vehicle and activated his
overhead lights, but the driver of the vehicle did not stop. Callahan continued to follow the vehicle
with the siren sounding, and the driver of the pickup truck stopped near a white frame house. Randy
told Callahan to leave his premises and began cursing. Callahan advised Randy he was being
detained for the Upshur County Sheriff's Department. As Randy made an abrupt approach toward
Callahan, Officer Bryan Naismith attempted to grab Randy's arm, Randy pulled away from Naismith,
and Naismith sprayed him with OC spray. Randy ran into the house, and Callahan and Naismith
followed in pursuit. A few minutes, later the deputy appeared and tried to calm down Randy. When
the deputy—who was wearing his official uniform, was acting under color of his authority as an
Upshur County deputy sheriff and was performing his duties within the geographical boundaries of
Upshur County—attempted to arrest Randy, Randy resisted. Randy contends the deputy had no
authority to arrest Randy and therefore was not lawfully discharging an official duty. We disagree. 
            There is no dispute the deputy was a public servant, wore his uniform, was within his
territorial jurisdiction, and was on the premises exercising his duties as a sheriff's deputy. The Texas
Court of Criminal Appeals has held:
Whether [the officer] was making a lawful arrest is not relevant to
determining if [the officer] was acting in the lawful discharge of his official duties. 
A police officer is still acting within the lawful discharge of his official duties when
he makes an unlawful arrest, so long as he is acting within his capacity as a peace
officer.

Montoya v. State, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987), overruled on other grounds, Cockrell
v. State, 897 S.W.2d 285, 298 (Tex. Crim. App. 1988). 
            The Montoya case has been cited and relied on by the Texas Court of Criminal Appeals. See
Hall v. State, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005); Hughes v. State, 897 S.W.2d 285, 297
(Tex. Crim. App. 1994). The "lawful discharge" of official duties means that the law enforcement
officer is not criminally or tortiously abusing the office as a public servant. Hall, 158 S.W.3d at
474–75. We conclude the evidence is legally sufficient to support the jury's conclusion that the
deputy was performing an official duty as a deputy of the Upshur County Sheriff's Department at the
time of this offense. And, as Randy has directed our attention to no location in the record showing
any evidence the officer was acting without lawful authority, we likewise conclude the evidence
supporting the jury's finding on this element is not outweighed by contrary evidence; the evidence
is, therefore, factually sufficient to support the jury's finding that the deputy was performing one of
his official duties at the time he was assaulted by Randy.
            We also find the evidence is factually and legally sufficient with respect to the remaining
elements of the charged offense. Callahan and the deputy entered Randy's home in pursuit of Randy
to make an arrest. The deputy and Randy became involved in an altercation, and Callahan "saw a
leg or a fist hit the deputy in the face." Callahan testified he believed Randy had deliberately struck
the deputy. The deputy and Randy apparently then separated, and the deputy again tried to take
control of Randy. Then, according to Callahan's continued testimony, he observed Randy grab the
deputy again and shove the deputy "through some kind of screen[,] which I thought was a television
screen at the time[,] and then fell onto me, which onto my knee[,] and we both went on the floor." 
The State subsequently introduced a photograph depicting the deputy's cut and bloodied elbow. The
deputy also testified he was injured intentionally by Randy. Randy, however, denied ever striking
the deputy. 
            Viewing the evidence in the light most favorable to the State, we conclude the evidence is
legally sufficient. Viewing all the evidence in a neutral light, we cannot say the evidence supporting
the jury's verdict is outweighed by contrary evidence or is so weak as to undermine confidence in
the verdict.
III.      Adequacy of the Indictment
            Finally, as part of his multifarious second point of error, Randy contends the indictment fails
to properly allege an offense. Again, we decline the opportunity to overrule Randy's point of error
as multifarious, and, in the interest of justice, will address this issue.
            If a defendant suspects there is a defect in an indictment, and if that defect can be corrected
by a pretrial amendment (that is to say, the defect is nonjurisdictional), then the defendant must raise
that issue in the form of a pretrial motion to quash. Ex parte Smith, No. PD-0616-04, 2005 Tex.
Crim. App. LEXIS 1773, at *1 (Tex. Crim. App. Oct. 19, 2005). If the defendant fails to object
before trial to a nonjurisdictional defect in the indictment, any such defect is waived. Id.
            The record does not show Randy filed a pretrial motion to quash the indictment, nor has
Randy shown in his brief on appeal that he presented the alleged defect to the trial court before
allowing the case to proceed to trial. See Tex. R. App. P. 33.1(a) (preservation of error; how shown). 
Randy has not preserved this issue for appellate review. We overrule Randy's second point of error.
IV.      Conclusion
            We affirm the trial court's judgment.



                                                                        Jack Carter
                                                                        Justice

Date Submitted:          October 6, 2005
Date Decided:             November 3, 2005
 
Do Not Publish