COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-133-CR

 

 

MICHAEL SCOTT NELSON                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                            Introduction








Arlington police arrested appellant Michael Scott
Nelson after finding methamphetamine and a semi-automatic pistol in a truck
that he was standing next to, and Afumbling@ in,
late at night in the parking lot of a closed business.  A jury later convicted appellant of
possession of four or more, but less than two hundred, grams of methamphetamine
with the intent to deliver and also found that appellant had used a deadly
weapon in the commission of the offense. 
In accordance with the jury=s
assessment, the trial court sentenced appellant to fifty-five years=
confinement.  In a single point,
appellant challenges the legal and factual sufficiency of the evidence to
support his conviction and the deadly weapon finding.  We affirm.

                          Standard
of Review - Legal Sufficiency

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

                         Standard
of Review - Factual Sufficiency








When reviewing the factual sufficiency of the evidence
to support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Neal v. State, 256
S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037
(2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7.

                                         Applicable
Facts








Officer Paul Shackelford of the Arlington Police
Department testified that on January 19, 2007 at around 1:53 a.m., he and
Officer Jason Rash were riding on patrol in the North District of
Arlington.  As Officer Shackelford turned
onto Centennial Road, he noticed a truck in the parking lot of Cavender=s Boots[2]
that had both its doors open.  The
business was not open at that time, however. 
Officer Shackelford noticed a man, whom he identified at trial as
appellant, standing by the wheel well part of the truck on the passenger side;
appellant was Aleaning over the bed of the
truck moving things around on the interior of the bed.@  Officer Shackelford testified that based on
the Aearly
morning hours, the secluded parking lot, [and] the business not being open,@ he
found appellant=s behavior suspicious.[3]

Officer Shackelford noticed that after appellant
saw him and Officer Rash in the patrol car, he Amade
several hurried or furtive movements inside the truck as if he was trying to conceal
something inside the bed of the truck.@  According to Officer Shackelford, this
increased his suspicion, so the officers pulled into the parking lot and
identified themselves to appellant as police officers.  They performed a Terry frisk on
appellant and checked to see if he had any outstanding warrants.  After discovering that appellant had an
outstanding warrant,[4]
Officer Shackelford handcuffed him and placed him under arrest.








Officer Shackelford searched the interior of the
truck and found a loaded magazine for a semi-automatic pistol on the passenger
side.  He also found a cell phone.  He then searched the truck bed and, under a
spare tire in the center rear part where appellant had been reaching earlier,[5]
found four plastic baggies with Aa white
crystal-like substance in each@ and a
Crown Royal bag.  The substance in the
baggies field tested positive for crystal methamphetamine.  Inside the Crown Royal bag was a nine
millimeter pistol of Asuch a type that it could hold@ the
magazine Officer Shackelford had found in the truck=s
interior.  Officer Shackelford testified
that, based on his training and experience, (1) he believed the baggies held a Alarge
amount@ of
crystal methamphetamine and (2) such an amount showed an intent to deliver.








While the officers were with appellant in the
parking lot, appellant=s cell phone rang and Officer
Shackelford answered it.  The caller ID
showed the name AMarcus,@ and the
caller identified himself as Marcus. 
Officer Shackelford did not identify himself as a police officer;
instead, he asked Marcus where he was and where he would like to meet.  Officer Shackelford suggested a meeting place
near the arrest scene and asked Marcus if he was ready to pick up the Astuff@; he
understood from the conversation with Marcus that it was methamphetamine.  After he ended the conversation, the phone
rang a second time.  Officer Shackelford
answered it, spoke to Marcus again, and changed the meeting place to a
different location.  He then contacted
some other officers to meet Marcus. 
There is no evidence regarding what happened with the other officers and
Marcus.

Officer Rash testified that when he and Officer
Shackelford pulled into the parking lot, appellant Abacked
up [from the truck] and then started moving towards the front right passenger
area of the door that was open.@  He said he checked appellant=s driver=s
license for warrants, notified Officer Shackelford of the outstanding warrant,
and helped Officer Shackelford place appellant in the police car after he was
placed under arrest.  He then started
working on booking paperwork while Officer Shackelford searched the truck.  Officer Shackelford called Officer Rash to
the truck to look at the various items he found as he found them.  According to Officer Rash, the amount of
methamphetamine in the truck, in his training and experience, Awas much
greater than personal use@ and was consistent with the
intent to deliver.

Michelle O=Neal, a
senior forensic chemist with the Tarrant County Medical Examiner=s
office, testified that the substance in the baggies tested to be
methamphetamine weighing a total of 111.87 grams, including adulterants and
dilutants.








Appellant testified that the truck in which the
drugs were found was his wife=s truck
and that he had loaned it to a friend earlier that day.  That night and the next morning, he was at a
twenty-four hour game room that is close to the Cavender=s;
because the parking lot of the game room was full, his friend parked the truck
in the Cavender=s parking lot.  When the police arrived, he was Astanding
out there talking to about five people . . . sitting in the grass between the
two parking lots and the truck.@  Appellant said he walked over to the truck
when the police arrived because

there was a police car
coming up.  And I wasn=t going to turn and run
the other way.  So I just felt--I had no
reason  to not feel comfortable to walk
up to that truck.  It=s my wife=s truck.  So I could have turned and went the other
way, yeah.  But I had no reason to.

 

Appellant testified that he opened the doors because he was going to
send his friend back to his house with the truck.  According to appellant, he was not leaning
into the truck; he was just standing there. 
He did not see the loaded magazine, nor did he touch anything in the
truck bed.








Appellant testified that the officers grabbed him
and made him stand in front of the police car, telling him that the video was
running.[6]  He said one of the officers was holding him
and the other kept running around the truck with a flashlight, leaning in, and
looking in the tool box and the truck bed. 
According to appellant, the officer was getting mad and finally asked
for consent to search the truck, which appellant refused.  He testified that the police officers then
locked him in the police car and searched the truck for twenty minutes, after
which they arrested him.

Appellant denied possessing the gun and drugs; he
also testified that he never intended to sell any drugs that night.

On cross-examination, appellant testified that he
did have a friend named Marcus; however, he denied that he was going to sell
drugs to Marcus that night.  He also
denied owning the cell phone.  He
admitted that he had previously written in a letter that he was trying to help
Marcus obtain a 16th of an ounce of ice, but he explained at trial that

[h]e [Marcus] was trying to get a 16th of Ice and he was asking me if
I knew anyone to get it from or whatnot. 
So I was actually sitting there waiting for a ride from him.  So that=s what we were waiting for.  If I had all this we wouldn=t have been waiting.  So why would we be waiting - - something that
I had a large amount of, why are we waiting for something?  I mean I was there with roughly ten people
and that=s what he was waiting
for.  But I wasn=t going to sell him
anything, no.

 








According to appellant, he was waiting outside with Marcus because
Marcus wanted to buy some ice, and appellant did not have any, nor did he have
any money to buy some with; thus, he and Marcus were Asitting
there waiting@ to get some before they went to
go shoot pool.[7]

The State recalled Officer Shackelford, who
testified that no one was with appellant when the officers saw him and the
truck, that appellant was fumbling around in the bed of the pickup truck when
the officers saw him, that they never asked for permission to search the truck,
that Marcus was not at the scene, and that the police report had not been
changed.

                                          Applicable
Law








To prove unlawful possession of a controlled
substance, the State must prove that the accused exercised control, management,
or care over the substance and that he knew the matter possessed was
contraband.  Tex. Health & Safety
Code Ann. ' 481.002(38) (Vernon Supp.
2008); Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); Tucker
v. State, 183 S.W.3d 501, 510 (Tex. App.CFort
Worth 2005, no pet.).  The evidence Amust
establish, to the requisite level of confidence, that the accused=s
connection with the drug was more than just fortuitous.  This is the whole of the so‑called >affirmative
links= rule.@  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995); Tucker, 183 S.W.3d at 510.

The Aaffirmative links rule@ is designed to protect
the innocent bystander from conviction based solely upon his fortuitous
proximity to someone else=s drugs.  This rule simply restates the common‑sense
notion that a person-‑such as a father, son, spouse, roommate, or friend‑‑may
jointly possess property like a house but not necessarily jointly possess the
contraband found in that house.  Thus, we
have formulated the rule that A[w]hen the accused is not in exclusive possession
of the place where the substance is found, it cannot be concluded that the
accused had knowledge of and control over the contraband unless there are
additional independent facts and circumstances which affirmatively link the
accused to the contraband.@

 

Poindexter v. State, 153 S.W.3d 402, 406 (Tex.
Crim. App. 2005) (footnotes omitted); Tucker, 183 S.W.3d at 510; McQuarters
v. State, 58 S.W.3d 250, 259 (Tex. App.CFort
Worth 2001, pet. ref=d).








Nonexclusive factors we may consider include (1)
the defendant=s presence when a search warrant
is executed, (2) whether the contraband was in plain view, (3) the defendant=s
proximity to and the accessibility of the narcotic, (4) whether the defendant
was under the influence of narcotics when arrested, (5) whether the defendant
possessed other contraband or narcotics when arrested, (6) whether the
defendant made incriminating statements when arrested, (7) whether the
defendant attempted to flee, (8) whether the defendant made furtive gestures,
(9) whether there was an odor of the contraband, (10) whether other contraband
or drug paraphernalia were present, (11) whether the defendant owned or had the
right to possess the place where the drugs were found, (12) whether the place
where the drugs were found was enclosed, (13) whether the accused was the
driver of the automobile in which the contraband was found, (14) whether the
defendant was found with a large amount of cash, and (15) whether the conduct
of the accused indicated a consciousness of guilt.  Tucker, 183 S.W.3d at 510; McQuarters,
58 S.W.3d at 259.








A>[U]sed .
. . a deadly weapon= during the commission of the
offense means that the deadly weapon was employed or utilized in order to
achieve its purpose.@ 
Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); Sanchez
v. State, 243 S.W.3d 57, 72 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d).  A deadly weapon may be Aused@ even if
it is merely possessed, if that possession facilitates the associated felony
offense.  Davis v. State, Nos.
05-06-01613B20-CR, 2008 WL 542460, at *5
(Tex. App.CDallas Feb. 29, 2008, pets. ref=d); Smith
v. State, 176 S.W.3d 907, 919 (Tex. App.CDallas
2005, pets. ref=d).  Thus, in determining the sufficiency of the
evidence to support a finding that the defendant used a deadly weapon[8]
during the commission of a felony offense, we must determine Awhether
a rational trier of fact could find beyond a reasonable doubt that the mere
possession of firearms facilitated the associated felony.@  Gale v. State, 998 S.W.2d 221, 224
(Tex. Crim. App. 1999); Smith, 176 S.W.3d at 918.

                                               Analysis

According to appellant, there is not a sufficient
nexus linking him to either the drugs or the gun to show that he intentionally
and knowingly possessed either, nor is there any evidence that he used or
exhibited the gun in any way.[9]  Appellant thus challenges the legal and
factual sufficiency of the evidence to show A(1) that
he intentionally or knowingly possessed a controlled substance, (2) that he intentionally
or knowingly used or exhibited a deadly weapon in connection with that offense,
and (3) that he possessed any controlled substance with the intent to deliver
the same.@[10]  Specifically, appellant points to the
following as showing the legal and factual insufficiency of the evidence:








No attempt was made to determine
the ownership of the truck herein, beyond the Appellant=s
admission that it belonged to his wife. 
No keys were found on the Appellant=s person
and with both its doors and truck bed open to the public anyone could have put
something into the truck at any time without Appellant knowing it.  No ownership of the firearm or finger prints
were offered to connect any of the contraband (drugs, gun or ammunition) to the
Appellant.  The Appellant made no
incriminatory statements to the police and did not attempt to flee or elude
them.  No money, drugs, weapons, ammunition,
or >dope
notes= were
found on the Appellant=s person.  There is no evidence that the officers even
saw the Appellant touch the spare tire in this case and thus no evidence of
knowledge, intent or possession.  There
is no evidence to show that the Appellant owned, touched or had any connection
with the cell phone found in the truck=s
cab.  There is no showing that the >Marcus= who
called on the phone was indeed calling in fact to speak to this Appellant.  There is no evidence to show that the
Appellant was intoxicated or high on dope at the time of this incident.  In fact the evidence shows a cooperative
Appellant who produced ID upon request. 
Being in the vicinity does not establish possession.

Appellant=s brief
at 9B10.

Legal
Sufficiency - Intentional and Knowing Possession of Controlled Substance and
Deadly Weapon

 

Appellant=s
argument focuses solely on what was not in evidence rather than the evidence
that was admitted at trial, which is what we must rely upon in performing both
a legal and factual sufficiency review. 
Here, the jury was entitled to disbelieve all of appellant=s
testimony and believe all of the officers=
testimony.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Schmidt v. State, 232 S.W.3d 66, 68
(Tex. Crim. App. 2007).













The officers= testimony
shows that appellant was standing alone next to the truck, which he apparently
had been allowed to drive and possess even though it belonged to his wife.  It was 1:53 a.m., and the business was
closed.  Appellant was Afumbling@ in the
truck bed; when he saw the officers, he Amade
several hurried or furtive movements inside the truck as if he was trying to
conceal something inside the bed of the truck.@  When the officers pulled up to the truck,
appellant moved toward the open passenger side door.  Appellant=s
actions, combined with his circumstances, are evidence of a consciousness of
guilt; a reasonable inference is that he knewCand was
trying to concealCnot only what was in the truck
bed (the gun and drugs), but also what was on the passenger side seat (the
loaded magazine).  See Simmons v.
State, 100 S.W.3d 484, 491B92 (Tex.
App.CTexarkana
2003, pet. ref=d) (holding that appellant=s going
to great lengths to conceal bag with drugs inside indicated consciousness of
guilt), cert. denied, 541 U.S. 996 (2004); see also Hooper v.
State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007) (holding that in performing a legal sufficiency review,
appellate courts must Adetermine whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence when viewed in the light most favorable to the verdict@).  Moreover, Officer Shackelford testified that
the drugs and gun were within appellant=s
reach.  See Deshong v. State, 625
S.W.2d 327, 329 (Tex. Crim. App. 1981); Robinson v. State, 174 S.W.3d
320, 326B27 (Tex.
App.CHouston
[1st Dist.] 2005, pet. ref=d).

In addition, the jury was entitled to attach
significance to the phone call from Marcus, particularly in light of the other
circumstances under which the officers found appellant.  A reasonable inference from the entire
record, viewed in the light most favorable to the verdict, is that the police
interrupted appellant on his way to a drug deal at which he intended to protect
either himself or the drugs, or to facilitate their sale, by possessing a
firearm.  Accordingly, we hold that,
based on the appropriate standard of review, the evidence is legally sufficient
to support both appellant=s conviction and the deadly
weapon finding.

Factual Sufficiency - Intentional and
Knowing Possession of Controlled Substance and Deadly Weapon

 

We hold that the evidence is
likewise sufficient when viewed according to the standard of review for factual
sufficiency.  As with legal sufficiency,
we must review all the evidence actually in the record, without focusing solely
on what is missing, to determine if the evidence is too weak to support the
conviction or whether the contrary evidence is so overwhelming that the
conviction cannot stand.  Watson,
204 S.W.3d at 414B15, 417.








Regardless of the actual ownership of the truck,
appellant=s right to use it was not
disputed; the jury could have disbelieved his testimony that he allowed a
friend to use the truck.  Even if the
jury did believe that part of appellant=s
testimony, it did not have to believe appellant=s claim
that he did not know the drugs were there and that he did not intend to sell
them, in light of the other evidence, particularly the evidence of his guilty
knowledge when the officers arrived at the scene.  There was no evidence regarding whether keys
were found or not.  There is not affirmative
testimony that no keys were found; we simply do not know whether any were found
or not.  In addition, the officers
testified that appellant was in the parking lot alone and appeared to be in
control of the truck.








As to the rest of the evidence appellant claims
is lacking, the Aaffirmative links@ factors
are nonexclusive, meaning that there need not be evidence of every one of them
to link a defendant to contraband.  Isbell
v. State, 246 S.W.3d 235, 238 (Tex. App.CEastland
2007, no pet.) (ANo set formula exists to dictate
a finding of affirmative links sufficient to support an inference of knowing
possession of contraband.  The number of
factors present is not as important as the logical force or the degree to which
the factors, alone or in combination, tend to affirmatively link the defendant
to the contraband.@ (citations omitted)).  We are satisfied that, here, based on the
appropriate standard of review, the presence of competent evidence as to but a
few of those factors is sufficiently strong, and the evidence to the contrary
not so overwhelming, that the evidence is also factually sufficient to support
appellant=s conviction and the deadly
weapon finding.

We overrule appellant=s sole
point.

                                             Conclusion

Having overruled appellant=s sole
point, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

 

PANEL:  LIVINGSTON, J.; CAYCE, C.J.; and DAUPHINOT,
J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 26, 2009











[1]See Tex. R. App. P. 47.4.





[2]Officer Shackelford
testified that the particular area of the North District in which the Cavender=s is located is Aa specific area that [the
officers] had been targeting due to a lot of illegal activity with subjects
involved in guns and narcotics.@  He also
explained on cross-examination that there was an eight-liner game room next to
the Cavender=s and that Athe clientele that
frequented [the] game room dealt with narcotics and weapons.@





[3]Officer Shackelford
testified on cross-examination that the parking lot is in a commercial area
near the access road (Watson) to Highway 360; thus, he agreed that the lot is
not secluded in the sense that it is located behind another building.  Officer Shackelford also agreed that there is
a fair amount of traffic on 360 and Watson at night.





[4]The State entered the
warrant into evidence.





[5]Officer Shackelford
testified that this area was within appellant=s reach when the officers
first saw him.





[6]Officer Rash testified
that there was no video equipment in the car.





[7]Appellant claimed that
Marcus=s name was originally
listed in the police report as being at the scene but that by the time of
trial, it was no longer shown in the report.





[8]A firearm is a deadly
weapon per se.  Tex. Penal Code Ann. ' 1.07(a)(17)(A) (Vernon
Supp. 2008); Ex parte Huskins, 176 S.W.3d 818, 820 (Tex. Crim. App.
2005).





[9]In his argument,
appellant also challenges the reasonableness of the officers= initial detention but
does not raise it as a separate issue in his brief, nor did he raise the issue
at trial.





[10]Appellant does not
challenge the intent to deliver evidence other than in connection with his
contention that there is insufficient evidence to show he intentionally and
knowingly possessed the methamphetamine. 
Thus, we confine our review to that evidence.