

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-133-CR

MICHAEL SCOTT NELSON                                           APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Arlington police arrested appellant Michael Scott Nelson after finding methamphetamine and a semi-automatic pistol in a truck that he was standing next to, and "fumbling" in, late at night in the parking lot of a closed business. A jury later convicted appellant of possession of four or more, but less than two hundred, grams of methamphetamine with the intent to deliver and also found

---

[1] ⬆ *See* Tex. R. App. P. 47.4.

that appellant had used a deadly weapon in the commission of the offense. In accordance with the jury's assessment, the trial court sentenced appellant to fifty-five years' confinement. In a single point, appellant challenges the legal and factual sufficiency of the evidence to support his conviction and the deadly weapon finding. We affirm.

## Standard of Review - Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## Standard of Review - Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly

2

outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is

3

necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

**Applicable Facts**

Officer Paul Shackelford of the Arlington Police Department testified that on January 19, 2007 at around 1:53 a.m., he and Officer Jason Rash were riding on patrol in the North District of Arlington. As Officer Shackelford turned onto Centennial Road, he noticed a truck in the parking lot of Cavender's Boots[2]

---

[2] Officer Shackelford testified that the particular area of the North District in which the Cavender's is located is "a specific area that [the officers] had been targeting due to a lot of illegal activity with subjects involved in guns and narcotics." He also explained on cross-examination that there was an eight-liner game room next to the Cavender's and that "the clientele that frequented [the] game room dealt with narcotics and weapons."

4

that had both its doors open.  The business was not open at that time, however.  Officer Shackelford noticed a man, whom he identified at trial as appellant, standing by the wheel well part of the truck on the passenger side; appellant was "leaning over the bed of the truck moving things around on the interior of the bed."  Officer Shackelford testified that based on the "early morning hours, the secluded parking lot, [and] the business not being open," he found appellant's behavior suspicious.[3]

Officer Shackelford noticed that after appellant saw him and Officer Rash in the patrol car, he "made several hurried or furtive movements inside the truck as if he was trying to conceal something inside the bed of the truck." According to Officer Shackelford, this increased his suspicion, so the officers pulled into the parking lot and identified themselves to appellant as police officers.  They performed a *Terry* frisk on appellant and checked to see if he had any outstanding warrants.  After discovering that appellant had an outstanding warrant,[4] Officer Shackelford handcuffed him and placed him under arrest.

---

[3] Officer Shackelford testified on cross-examination that the parking lot is in a commercial area near the access road (Watson) to Highway 360; thus, he agreed that the lot is not secluded in the sense that it is located behind another building.  Officer Shackelford also agreed that there is a fair amount of traffic on 360 and Watson at night.

[4] The State entered the warrant into evidence.

Officer Shackelford searched the interior of the truck and found a loaded magazine for a semi-automatic pistol on the passenger side. He also found a cell phone. He then searched the truck bed and, under a spare tire in the center rear part where appellant had been reaching earlier,[5] found four plastic baggies with "a white crystal-like substance in each" and a Crown Royal bag. The substance in the baggies field tested positive for crystal methamphetamine. Inside the Crown Royal bag was a nine millimeter pistol of "such a type that it could hold" the magazine Officer Shackelford had found in the truck's interior. Officer Shackelford testified that, based on his training and experience, (1) he believed the baggies held a "large amount" of crystal methamphetamine and (2) such an amount showed an intent to deliver.

While the officers were with appellant in the parking lot, appellant's cell phone rang and Officer Shackelford answered it. The caller ID showed the name "Marcus," and the caller identified himself as Marcus. Officer Shackelford did not identify himself as a police officer; instead, he asked Marcus where he was and where he would like to meet. Officer Shackelford suggested a meeting place near the arrest scene and asked Marcus if he was ready to pick up the "stuff"; he understood from the conversation with Marcus

---

[5] Officer Shackelford testified that this area was within appellant's reach when the officers first saw him.

that it was methamphetamine. After he ended the conversation, the phone rang a second time. Officer Shackelford answered it, spoke to Marcus again, and changed the meeting place to a different location. He then contacted some other officers to meet Marcus. There is no evidence regarding what happened with the other officers and Marcus.

Officer Rash testified that when he and Officer Shackelford pulled into the parking lot, appellant "backed up [from the truck] and then started moving towards the front right passenger area of the door that was open." He said he checked appellant's driver's license for warrants, notified Officer Shackelford of the outstanding warrant, and helped Officer Shackelford place appellant in the police car after he was placed under arrest. He then started working on booking paperwork while Officer Shackelford searched the truck. Officer Shackelford called Officer Rash to the truck to look at the various items he found as he found them. According to Officer Rash, the amount of methamphetamine in the truck, in his training and experience, "was much greater than personal use" and was consistent with the intent to deliver.

Michelle O'Neal, a senior forensic chemist with the Tarrant County Medical Examiner's office, testified that the substance in the baggies tested to be methamphetamine weighing a total of 111.87 grams, including adulterants and dilutants.

Appellant testified that the truck in which the drugs were found was his wife's truck and that he had loaned it to a friend earlier that day. That night and the next morning, he was at a twenty-four hour game room that is close to the Cavender's; because the parking lot of the game room was full, his friend parked the truck in the Cavender's parking lot. When the police arrived, he was "standing out there talking to about five people . . . sitting in the grass between the two parking lots and the truck." Appellant said he walked over to the truck when the police arrived because

> there was a police car coming up. And I wasn't going to turn and run the other way. So I just felt--I had no reason to not feel comfortable to walk up to that truck. It's my wife's truck. So I could have turned and went the other way, yeah. But I had no reason to.

Appellant testified that he opened the doors because he was going to send his friend back to his house with the truck. According to appellant, he was not leaning into the truck; he was just standing there. He did not see the loaded magazine, nor did he touch anything in the truck bed.

Appellant testified that the officers grabbed him and made him stand in front of the police car, telling him that the video was running.[6] He said one of the officers was holding him and the other kept running around the truck with

---

[6] Officer Rash testified that there was no video equipment in the car.

8

a flashlight, leaning in, and looking in the tool box and the truck bed. According to appellant, the officer was getting mad and finally asked for consent to search the truck, which appellant refused. He testified that the police officers then locked him in the police car and searched the truck for twenty minutes, after which they arrested him.

Appellant denied possessing the gun and drugs; he also testified that he never intended to sell any drugs that night.

On cross-examination, appellant testified that he did have a friend named Marcus; however, he denied that he was going to sell drugs to Marcus that night. He also denied owning the cell phone. He admitted that he had previously written in a letter that he was trying to help Marcus obtain a 16th of an ounce of ice, but he explained at trial that

> [h]e [Marcus] was trying to get a 16th of Ice and he was asking me if I knew anyone to get it from or whatnot. So I was actually sitting there waiting for a ride from him. So that's what we were waiting for. If I had all this we wouldn't have been waiting. So why would we be waiting - - something that I had a large amount of, why are we waiting for something? I mean I was there with roughly ten people and that's what he was waiting for. But I wasn't going to sell him anything, no.

According to appellant, he was waiting outside with Marcus because Marcus wanted to buy some ice, and appellant did not have any, nor did he have any

9

money to buy some with; thus, he and Marcus were "sitting there waiting" to get some before they went to go shoot pool.[7]

The State recalled Officer Shackelford, who testified that no one was with appellant when the officers saw him and the truck, that appellant was fumbling around in the bed of the pickup truck when the officers saw him, that they never asked for permission to search the truck, that Marcus was not at the scene, and that the police report had not been changed.

## Applicable Law

To prove unlawful possession of a controlled substance, the State must prove that the accused exercised control, management, or care over the substance and that he knew the matter possessed was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2008); *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); *Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.). The evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called

---

[7] Appellant claimed that Marcus's name was originally listed in the police report as being at the scene but that by the time of trial, it was no longer shown in the report.

10

'affirmative links' rule." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Tucker*, 183 S.W.3d at 510.

> The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense notion that a person--such as a father, son, spouse, roommate, or friend--may jointly possess property like a house but not necessarily jointly possess the contraband found in that house. Thus, we have formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband."

*Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (footnotes omitted); *Tucker*, 183 S.W.3d at 510; *McQuarters v. State*, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref'd).

Nonexclusive factors we may consider include (1) the defendant's presence when a search warrant is executed, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of the

11

contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was the driver of the automobile in which the contraband was found, (14) whether the defendant was found with a large amount of cash, and (15) whether the conduct of the accused indicated a consciousness of guilt.  *Tucker*, 183 S.W.3d at 510; *McQuarters*, 58 S.W.3d at 259.

"'[U]sed . . . a deadly weapon' during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989); *Sanchez v. State*, 243 S.W.3d 57, 72 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).  A deadly weapon may be "used" even if it is merely possessed, if that possession facilitates the associated felony offense.  *Davis v. State*, Nos. 05-06-01613–20-CR, 2008 WL 542460, at *5 (Tex. App.—Dallas Feb. 29, 2008, pets. ref'd); *Smith v. State*, 176 S.W.3d 907, 919 (Tex. App.—Dallas 2005, pets. ref'd).  Thus, in determining the sufficiency of the evidence to support a finding that the defendant used a deadly weapon[8] during the

---

[8] A firearm is a deadly weapon per se.  Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp. 2008); *Ex parte Huskins*, 176 S.W.3d 818, 820

12

commission of a felony offense, we must determine "whether a rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms facilitated the associated felony." *Gale v. State*, 998 S.W.2d 221, 224 (Tex. Crim. App. 1999); *Smith*, 176 S.W.3d at 918.

## Analysis

According to appellant, there is not a sufficient nexus linking him to either the drugs or the gun to show that he intentionally and knowingly possessed either, nor is there any evidence that he used or exhibited the gun in any way.[9] Appellant thus challenges the legal and factual sufficiency of the evidence to show "(1) that he intentionally or knowingly possessed a controlled substance, (2) that he intentionally or knowingly used or exhibited a deadly weapon in connection with that offense, and (3) that he possessed any controlled substance with the intent to deliver the same."[10] Specifically, appellant points to the following as showing the legal and factual insufficiency of the evidence:

---

(Tex. Crim. App. 2005).

[9] In his argument, appellant also challenges the reasonableness of the officers' initial detention but does not raise it as a separate issue in his brief, nor did he raise the issue at trial.

[10] Appellant does not challenge the intent to deliver evidence other than in connection with his contention that there is insufficient evidence to show he intentionally and knowingly possessed the methamphetamine. Thus, we confine our review to that evidence.

13

No attempt was made to determine the ownership of the truck herein, beyond the Appellant's admission that it belonged to his wife. No keys were found on the Appellant's person and with both its doors and truck bed open to the public anyone could have put something into the truck at any time without Appellant knowing it. No ownership of the firearm or finger prints were offered to connect any of the contraband (drugs, gun or ammunition) to the Appellant. The Appellant made no incriminatory statements to the police and did not attempt to flee or elude them. No money, drugs, weapons, ammunition, or 'dope notes' were found on the Appellant's person. There is no evidence that the officers even saw the Appellant touch the spare tire in this case and thus no evidence of knowledge, intent or possession. There is no evidence to show that the Appellant owned, touched or had any connection with the cell phone found in the truck's cab. There is no showing that the 'Marcus' who called on the phone was indeed calling in fact to speak to this Appellant. There is no evidence to show that the Appellant was intoxicated or high on dope at the time of this incident. In fact the evidence shows a cooperative Appellant who produced ID upon request. Being in the vicinity does not establish possession.

Appellant's brief at 9–10.

**Legal Sufficiency - Intentional and Knowing Possession of Controlled Substance and Deadly Weapon**

Appellant's argument focuses solely on what was not in evidence rather than the evidence that was admitted at trial, which is what we must rely upon in performing both a legal and factual sufficiency review. Here, the jury was entitled to disbelieve all of appellant's testimony and believe all of the officers' testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Schmidt v. State*, 232 S.W.3d 66, 68 (Tex. Crim. App. 2007).

14

The officers' testimony shows that appellant was standing alone next to the truck, which he apparently had been allowed to drive and possess even though it belonged to his wife. It was 1:53 a.m., and the business was closed. Appellant was "fumbling" in the truck bed; when he saw the officers, he "made several hurried or furtive movements inside the truck as if he was trying to conceal something inside the bed of the truck." When the officers pulled up to the truck, appellant moved toward the open passenger side door. Appellant's actions, combined with his circumstances, are evidence of a consciousness of guilt; a reasonable inference is that he knew — and was trying to conceal — not only what was in the truck bed (the gun and drugs), but also what was on the passenger side seat (the loaded magazine). *See Simmons v. State*, 100 S.W.3d 484, 491–92 (Tex. App.—Texarkana 2003, pet. ref'd) (holding that appellant's going to great lengths to conceal bag with drugs inside indicated consciousness of guilt), *cert. denied*, 541 U.S. 996 (2004); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007) (holding that in performing a legal sufficiency review, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict"). Moreover, Officer Shackelford testified that the drugs and gun were within appellant's reach. *See Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim.

15

App. 1981); *Robinson v. State*, 174 S.W.3d 320, 326–27 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In addition, the jury was entitled to attach significance to the phone call from Marcus, particularly in light of the other circumstances under which the officers found appellant. A reasonable inference from the entire record, viewed in the light most favorable to the verdict, is that the police interrupted appellant on his way to a drug deal at which he intended to protect either himself or the drugs, or to facilitate their sale, by possessing a firearm. Accordingly, we hold that, based on the appropriate standard of review, the evidence is legally sufficient to support both appellant's conviction and the deadly weapon finding.

**Factual Sufficiency - Intentional and Knowing Possession of Controlled Substance and Deadly Weapon**

We hold that the evidence is likewise sufficient when viewed according to the standard of review for factual sufficiency. As with legal sufficiency, we must review all the evidence actually in the record, without focusing solely on what is missing, to determine if the evidence is too weak to support the conviction or whether the contrary evidence is so overwhelming that the conviction cannot stand. *Watson*, 204 S.W.3d at 414–15, 417.

Regardless of the actual ownership of the truck, appellant's right to use it was not disputed; the jury could have disbelieved his testimony that he

16

allowed a friend to use the truck. Even if the jury did believe that part of appellant's testimony, it did not have to believe appellant's claim that he did not know the drugs were there and that he did not intend to sell them, in light of the other evidence, particularly the evidence of his guilty knowledge when the officers arrived at the scene. There was no evidence regarding whether keys were found or not. There is not affirmative testimony that no keys were found; we simply do not know whether any were found or not. In addition, the officers testified that appellant was in the parking lot alone and appeared to be in control of the truck.

As to the rest of the evidence appellant claims is lacking, the "affirmative links" factors are nonexclusive, meaning that there need not be evidence of every one of them to link a defendant to contraband. *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.) ("No set formula exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the defendant to the contraband." (citations omitted)). We are satisfied that, here, based on the appropriate standard of review, the presence of competent evidence as to but a few of those factors is sufficiently strong, and the evidence to the contrary not so

17

overwhelming, that the evidence is also factually sufficient to support appellant's conviction and the deadly weapon finding.

We overrule appellant's sole point.

## Conclusion

Having overruled appellant's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, J.; CAYCE, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 26, 2009