AFFIRMED; Opinion Filed November 8, 2016.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-15-01014-CR

**KIELLE DROMONE MCNEAL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F-1500409-L**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Lang

Following a plea of not guilty, appellant Kielle Dromone McNeal was convicted by a jury of manslaughter. Additionally, appellant pleaded true to one enhancement paragraph and the jury found that enhancement paragraph true. Punishment was assessed by the jury at twenty-six years' imprisonment.

In two issues on appeal, appellant contends (1) he was "denied his statutory (state and federal) and constitutional right to a speedy trial" and (2) "[t]he charge of the [trial] court at punishment was fundamentally defective by incorrectly instructing the jury on appellant's eligibility to seek parole to his detriment in the sentence assessed." We decide against appellant on his two issues. The trial court's judgment is affirmed.

# I. FACTUAL AND PROCEDURAL CONTEXT

The record shows that several years prior to the trial in this case, appellant was convicted of the April 27, 2008 murder of Weldon "Glen" Liscum, III in trial court cause number F08–47896-L and sentenced to fifty years' imprisonment. In an opinion dated October 15, 2014, the Texas Court of Criminal Appeals granted an application for writ of habeas corpus filed by appellant based on ineffective assistance of counsel respecting that conviction. *See Ex parte McNeal*, No. WR-81,623-01, 2014 WL 5422146 (Tex. Crim. App. Oct. 15, 2014) (not designated for publication). That opinion stated that the judgment in cause number F08–47896–L is "set aside" and "[a]pplicant is remanded to the custody of the Sheriff of Dallas County." *Id.* at *1. The mandate pertaining to that opinion was issued on November 10, 2014.

On June 15, 2015, the trial court held a hearing on a motion it described as a "speedy trial motion" filed pro se by appellant in cause number F08-47896.[1] At that hearing, counsel for appellant stated (1) it is appellant's position that although "32.802" of the Texas Code of Criminal Procedure has been repealed, "the prior mandates of 32.802 are still applicable to his cause," and (2) appellant "demands a dismissal of this case for the lack of prosecution commencing within 180 days from the date that his mandate was issued, which overturned his conviction and ordered a new trial." Additionally, appellant testified at that hearing (1) his father recently sent the district attorney a "fax" showing "[i]t's still 180-day [sic] statute" and "if the State is not ready for court within 180 days after the repeal law that the State—that it must be dismissed," and (2) under "a federal law from 2014," the State had seventy days "in which to get me back to trial" and because that deadline was not met, his case "must be dismissed by federal law as well." The State responded in part that the Texas statute described by appellant was repealed in 2005 and is no longer applicable. Then, counsel for appellant stated (1) "[appellant]

---

[1] The record does not contain a copy of any motion filed by appellant on or before the date of that hearing.

just keeps insisting that the time limitations are still applicable," but "it's my understanding, it's been repealed," and (2) "there is still the constitutional aspect of speedy trial," which "applies with actual proof or finding that the defendant was harmed by delaying." At conclusion of that hearing, the trial court overruled the motion before it.

On July 13, 2015, a document titled "Reindictment" was filed in trial court cause number F-1500409-L. That reindictment alleged that on approximately April 27, 2008, appellant (1) intentionally and knowingly caused the death of the complainant, Liscum, by shooting him with a deadly weapon and (2) intended to cause serious bodily injury to the complainant and committed an act clearly dangerous to human life by shooting the complainant with a deadly weapon, which caused his death. Also, the reindictment included one enhancement paragraph, which alleged that appellant was previously convicted of the felony offense of "assault family violence."

On approximately August 3, 2015, appellant, acting pro se, filed several motions to quash the reindictment in cause number F-1500409-L. In those motions, which were substantially similar, appellant stated in part that the reindictment is "defective" for the following reason:

> I returned to Dallas County November 13, 2014, that was Mandated on November 10, 2014 by State and Federal law, if I am to be reindicted on the same information, and order by New Trial the State or Government has 30 days, from the date of summons or rearrest date to present Indictment From Mandate of November 10, 2014 to Reindictment dated July 13, 2015 make the case #F1500409 void. The only Remedy is for the indictment to be set-aside or dropped.

Trial commenced August 10, 2015. Prior to voir dire, appellant asked the trial court to rule on his above-described pro se motions to quash the reindictment. Counsel for appellant argued in part (1) those motions are "based upon the fact the State failed to get [appellant] indicted within the speedy trial guidelines" and (2) it is appellant's position that "[the State's]

reindictment of him is a violation of speedy trial; that he was not indicted in a timely fashion, from the date of that mandate." The trial court denied those motions.

Julie Humes testified that at the time of the shooting in question, she and Liscum were engaged and lived in a trailer with several other people. Humes, Liscum, and the other trailer residents were acquainted with appellant and his girlfriend, Rachael. According to Humes, on the day before the shooting, Rachael was "having issues with her relationship" and came to the trailer to spend the night. The next day, Humes was asleep in her bedroom at approximately 1:00 p.m. when she heard a "commotion" outside. Humes grabbed a "taser" and stepped outside the trailer. Appellant and several residents of the trailer, including Liscum, were in the front yard. Humes testified appellant was "acting pretty irate" and "[t]alking about a purse that belonged to Rachael being taken." Rachael was inside appellant's vehicle, which was parked near the trailer. Humes stated she told the group to "break it up" and appellant started to "cuss" at her. Then, several of the trailer residents made insulting comments to appellant. Humes told appellant to leave and "popped" the taser "in the air." Appellant got into his vehicle and left. Humes testified that as appellant was leaving, he "repeatedly said that he would be back."

According to Humes, approximately thirty minutes later she and Liscum were outside in front of the trailer and saw appellant drive up in a truck. There were three passengers in the truck, whom Humes did not recognize. Liscum grabbed a baseball bat out of the back seat of his car. Humes testified appellant got out of the truck with a gun in his hand and "was swinging it around in the air." Humes stated she yelled at appellant and "got his attention." Appellant pointed the gun at her. Then, she "used a racial slur." At that point, appellant "pulled the trigger on the gun, and it jammed." According to Humes, appellant started "cussing towards the gun" and "trying to get it to unjam." Humes "took off towards the house" to call the police. When she was near the front door, she heard a gunshot. She turned toward Liscum and saw appellant

–4–

pointing the gun at him. She stated Liscum was no longer holding the bat and had nothing in his hands. Appellant fired a second shot, which hit Liscum. Liscum stumbled to his knees, then fell face down on the ground. Appellant returned to the truck and drove away. Paramedics arrived minutes later, but Liscum died en route to the hospital.

Following similar testimony by several other eyewitnesses and the admission of numerous photographs and other exhibits into evidence, the jury found appellant guilty of "the lesser-included offense of manslaughter, as included in the indictment." Then, both sides presented evidence respecting punishment.

Rachael Pickard testified she began dating appellant in approximately 2007 and was living with him at the time of the shooting in question. She stated she and appellant rented a room in the home of Robert Fonderen. According to Pickard, (1) appellant supported himself by selling crack cocaine; (2) she and appellant used cocaine together several times a week; (3) appellant was physically abusive to her on multiple occasions, including choking her and hitting her; (4) she required stitches on one occasion when appellant hit her in the mouth; (5) she did not contact police respecting the abuse by appellant; (6) she had sex with Fonderen several times "to pay for rent"; (7) her participation in that payment arrangement was not against her will; and (8) she had sex with other "customers" approximately once a week, which appellant knew about, and it was "part of [appellant's] responsibilities" to make sure she was "safe" when she did so.

Joy Price testified appellant is the father of her seventeen-year-old son. Price stated that over the course of her four-year relationship with appellant, he physically abused her on multiple occasions by hitting her. She called police several times respecting that physical abuse, but chose not to "press charges" against appellant.

Fonderen testified he rented a room to appellant and Pickard at appellant's request. According to Fonderen, he and appellant made an agreement that in exchange for the room,

Fonderen would be paid $100 per week and could have sex with Pickard whenever he wanted to. Fonderen testified Pickard "wasn't a part of that agreement" and "didn't want no part of it." However, Fonderen stated, Pickard and appellant moved into Fonderen's home and Fonderen had sex with Pickard "frequently." Further, Fonderen testified he saw appellant hit Pickard on one occasion.

Murinna Olugbode testified he is a detention officer in the Dallas County jail. He stated that in approximately 2008, appellant was being held there and was housed in the area where he worked. According to Olugbode, appellant "behaved badly," had "a bad temper," and was disrespectful, rude, and vulgar to the jail officers and other inmates. Olugbode stated he had to "write some reports" on appellant because of fighting and other behavior.

Humes and a sister of Liscum testified that losing Liscum was painful and difficult for them. Additionally, an exhibit consisting of a summary of prior convictions of appellant was admitted into evidence without objection and appellant stipulated he is the person named in that exhibit. The summary stated appellant was convicted of (1) burglary of a building, forgery, and misdemeanor theft in approximately 1997; (2) assault family violence, misdemeanor assault, and felony assault family violence in approximately 2000; (3) two misdemeanor thefts in approximately 2004; and (4) burglary of a vehicle and felony theft in approximately 2007.

Lakeshia Ealy testified she met appellant in high school and he is the father of her son Kielle Junior, who was born in 1997. Ealy stated appellant "has a good heart" and is "really, really good with kids." She stated that when appellant went to jail in 2008, she "felt like he was angry," but since that time she has seen "a tremendous change" and he has "grown." Also, she stated he has a "good-size" family in the area who will "be there as a support mechanism for him" when he is released.

Kielle McNeal, Jr. ("K. McNeal, Jr.") testified appellant is his father. He stated he (1) currently attends college and is planning to join the U.S. Air Force; (2) needs appellant in his life; and (3) has younger siblings who "are walking down a darker path" and he would like for his father "to be there to basically guide them." Further, K. McNeal, Jr. testified that since appellant has been incarcerated, appellant (1) has apologized for "the whole incident" and "grown wiser" and (2) "always seem[s] to have wise information to tell me and try to lead me in a great, positive direction." On cross-examination, K. McNeal, Jr. testified appellant (1) has a mother who has "been supportive of him, his whole life"; (2) had his father "in his life" while he was growing up; and (3) attended college on a football scholarship. Also, K. McNeal, Jr. stated that in the evening on the date of the shooting in question, at a time he believes was after the shooting, appellant dropped off him and his younger brothers at a skating rink and "was really in a positive mood."

The charge of the court respecting punishment instructed the jury that if they found the enhancement paragraph true, they were to "assess the punishment of the defendant at confinement . . . for a term of years not more than ninety-nine (99) years of life nor less than five (5) years." Additionally, the charge contained instructions respecting good conduct time and parole.[2]

---

[2] Specifically, the charge of the court stated in part,

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-half of the sentenced imposed or thirty (30) years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by the prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

–7–

In his closing argument as to punishment, counsel for appellant argued that the appropriate sentence in this case is "ten years in the penitentiary." The State asserted it was "not going to ask for the max" and was "not going to put a number out there," but argued "this is not a case where you need to be thinking about the low end of the punishment range" because "[t]his is a person that does not respect human life." Additionally, the State argued that assessing punishment is "not just about this case" but rather is about "[e]very bad thing that you know about [appellant]: The drug dealing, the pimping, the violence."

During the jury's deliberations respecting punishment, the trial court received two notes from the jury. The first note stated, "1. What is the defendant's current age? 2. How much time has he already served for this offense?" The second note stated, "Will the time served be subtracted from the sentence the jury imposed? Can the jury discuss defendant's current imprisonment?" The trial court responded to both notes by stating, "The Court instructs you that you have all the law and the evidence. Please continue your deliberations."

Following the jury's assessment of punishment as described above, the trial court signed a judgment in accordance with the jury's findings. That judgment includes an affirmative finding that appellant used a deadly weapon in the commission of the offense in question. This appeal timely followed.

## II. DENIAL OF RIGHT TO SPEEDY TRIAL

### A. Standard of Review

In reviewing a trial court's speedy trial decision, "we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002); *accord*

---

You are instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and are no concern of yours.

*Moon v. State*, 451 S.W.3d 28, 55 (Tex. Crim. App. 2014); *Coy v. State*, Nos. 05-15-00011-CR, 05-15-00012-CR, & 05-15-00013-CR, 2016 WL 1705153, at *3 (Tex. App.—Dallas Apr. 26, 2016, no pet.) (mem. op., not designated for publication). Further, we review the trial court's ruling in light of the arguments, information, and evidence available to the trial court at the time it ruled. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Ledbetter v. State*, No. 05-07-00481-CR, 2008 WL 2190982, at *2 (Tex. App.—Dallas May 28, 2008, pet. denied) (not designated for publication).

### B. Applicable Law

Both the Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee a speedy trial. *See* U.S. CONST. amend. VI & XIV; TEX. CONST. art. 1, § 10; *Coy*, 2016 WL 1705153, at *3 (citing *Zamorano*, 84 S.W.3d at 647). "The right attaches once a person becomes an 'accused'—that is, once he is arrested or charged." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, . . . no Sixth Amendment right to a speedy trial arises until charges are pending."). If an accused's speedy trial right is violated, the proper remedy is to dismiss the prosecution with prejudice. *See Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim. App. 2003).

While the Texas Constitution provides an independent speedy trial guarantee, the Texas Court of Criminal Appeals has traditionally analyzed speedy trial claims under the same framework established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972). *See Zamorano*, 84 S.W.3d at 647–48; *Hicks v. State*, No. 05-14-00417-CR, 2015 WL 4462277, at *6 (Tex. App.—Dallas July 21, 2015, pet. ref'd) (mem. op., not designated for publication). That framework requires us to consider four factors: (1) the length of the delay, (2)

the reasons for the delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. No single factor is sufficient or necessary to establish a violation of the right to a speedy trial. *Id*. at 533. However, the length of the delay is, to some extent, a "triggering mechanism" for analysis of the other factors. *Id*. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. Although no "set time element" triggers a *Barker* analysis, a delay of about one year is generally presumptively prejudicial for purposes of the length-of-delay factor. *See Cantu*, 253 S.W.3d at 281; *Shaw*, 117 S.W.3d at 889; *see also Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (recognizing that courts have held delay of eight months is presumptively unreasonable and triggers speedy trial analysis). If the delay is "presumptively prejudicial," the State bears the burden of justifying the delay and the defendant has the burden to prove that he asserted the right and that he suffered prejudice because of the delay. *Cantu*, 253 S.W.3d at 280. "The defendant's burden of proof varies inversely with the State's degree of culpability for the delay." *Id*. In evaluating a speedy trial claim, we balance the defendant's conduct against the State's conduct and consider the four factors together, along with any other relevant circumstances. *Barker*, 407 U.S. at 530, 533. The balancing test applied to a speedy trial analysis as a whole is a legal question. *See Cantu*, 253 S.W.3d at 282; *Hicks*, 2015 WL 4462277, at *6.

Additionally, "the Due Process Clause of the Fifth Amendment has a limited role to play in protecting against oppressive delay." *Hicks*, 2015 WL 4462277, at *9 (citing *State v. Krizan-Wilson*, 354 S.W.3d 808, 813–14 (Tex. Crim. App. 2011)). "In order to be entitled to relief, however, the defendant must demonstrate that the delay: (1) caused substantial prejudice to his right to a fair trial and (2) was an intentional device used to gain a tactical advantage over the accused." *Id*. There must be proof of both elements. *Id*.

## C. Application of Law to Facts

As described above, appellant contends in his first issue that he was "denied his statutory (state and federal) and constitutional right to a speedy trial." According to appellant, (1) the "new indictment" against him "was returned more than 180 days after the mandate was issued by the Court of Appeals" and (2) "[u]nder state and federal statutes and the United States Constitution, in particular the Sixth Amendment, the indictment violated appellant's right to speedy trial."

The State responds that the delay in appellant's reindictment did not deny his right to a speedy trial. Further, the State asserts (1) because appellant did not raise any due process claim, any such claim has been waived, and (2) even if appellant's due process right to a speedy trial is considered, he has not demonstrated he is entitled to relief respecting a due process violation.

Appellant asserts in his appellate brief (1) "[o]n June 15, 2015, . . . the [trial] court convened a hearing in Cause No. F08-47896-L to consider appellant's pro se Motions to Quash Indictment" and (2) "[i]t is clear from the context at the [June 15, 2015] hearing that appellant was actually complaining of a violation of his right to a speedy trial because of the re-indictment in Cause No. F15-00409-L again charging appellant with the offense of murder." Also, appellant asserts that at the June 15, 2015 hearing, he "presented four arguments as to the speedy trial violations." Specifically, he contends that at that hearing (1) he argued that although article 32A.02 of the Texas Code of Civil Procedure has been repealed, "the statute's requirement that his case be brought to trial within 180 days was still applicable to his case"; (2) he argued that a "second statute," article 32.01(a) of the Texas Code of Criminal Procedure, "also prevented the State from reindicting him because the State was not ready for trial within 180 days"; (3) he argued that "a Federal Statute was violated" because the State was not "ready for trial" within the

–11–

required time period; and (4) his trial counsel "noted" that he "had the constitutional right to a speedy trial."

However, the record shows neither the reindictment nor appellant's motions to quash it had been filed at the time of the June 15, 2015 hearing. Rather, that hearing pertained to a motion described by the trial court as a pro se "speedy trial motion." Further, the record shows the only arguments asserted by appellant at that hearing (1) were based on article "32.802" and unspecified "federal law" and (2) pertained specifically to the time period within which the State must be "ready for trial." The record shows no mention of an indictment or the time period respecting such, nor did appellant cite or mention article 32.01(a). Also, while appellant's counsel stated during the hearing that "there is still the constitutional aspect of speedy trial," there was (1) no assertion that appellant's constitutional right to a speedy trial had been violated and (2) no evidence presented as to harm.

Subsequently, immediately prior to trial on August 10, 2015, the trial court heard appellant's three pro se motions to quash the reindictment, which motions were filed on approximately August 3, 2015. In those motions, appellant complained as to the length of time between his "summons or rearrest date," which he contended was November 13, 2014, and his July 13, 2015 reindictment. Specifically, he argued that "[the State's] reindictment of him is a violation of speedy trial; that he was not indicted in a timely fashion, from the date of that mandate." Because the record shows the June 15, 2015 hearing and the August 10, 2015 hearing involved different motions and arguments, we address those motions and arguments in turn.

First, as to appellant's "speedy trial motion" heard on June 15, 2015, the record shows that motion was based primarily on repealed article 32A.02 of the code of criminal procedure.[3]

_____

[3] Although the reporter's record describes the statute in question as "32.802" of the Texas Code of Criminal Procedure, this Court's research does not show any such statute has ever existed. Further, appellant's brief on appeal describes the statute in question as repealed article 32A.02. That article, known as the Speedy Trial Act, required the State to be ready for trial within 180 days after the commencement of a felony

–12–

Although the parties do not dispute that article was repealed in 2005, appellant contends "the statute's requirement that his case be brought to trial within 180 days [is] still applicable to his case." Appellant cites no authority for that position and we have found none. *Cf. Bryan v. State*, No. 04-06-00147-CR, 2007 WL 1133216, at *3 n.2 (Tex. App.—San Antonio Apr. 18, 2007, no pet.) (mem. op., not designated for publication) (article 32A.02 has been held unconstitutional and repealed and "[a]s such, in Texas, . . . a defendant's right to a speedy trial is analyzed under the *Barker* factors").

Additionally, in his appellate argument pertaining to that contention, appellant cites articles 17.151 and 51.14 of the Texas Code of Criminal Procedure and describes them as "additional authority that his right to a speedy trial has been violated." *See* TEX. CODE CRIM. PROC. ANN. art. 17.151 (West 2015); *id.* art. 51.14 (West 2006). Appellant does not otherwise describe or address those statutes. Article 17.151 provides in part that, subject to certain exceptions, "[a] defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the state is not ready for trial of the criminal action for which he is being detained within . . . 90 days from commencement of his detention if he is accused of a felony." TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(1). Article 51.14 is titled "Interstate Agreement on Detainers" and provides cooperative procedures for states to use in disposing of charges against persons incarcerated in other jurisdictions. TEX. CODE CRIM. PROC. ANN. art. 15.14. The portions of that article cited by appellant pertain to the procedures for making an incarcerated person available for trial of charges in another state and provide in part (1) "in respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the

---

criminal action or risk dismissal of the indictment with prejudice. *See* TEX. CODE CRIM. PROC. ANN. art. 32A.02, § 1(1) (Vernon 1989), *repealed by* Act of May 29, 2005, 79th Leg., R.S., ch. 1019, § 2, 2005 Tex. Gen. Laws 3464, 3464 (effective June 18, 2005); *see also Ledbetter*, 2008 WL 2190982, at *3.

receiving state" and (2) if trial is not had on the indictment or complaint for which the prisoner was sent to the receiving state prior to his return to the sending state, such indictment or complaint "shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." *Id*. art. IV (a)–(c). The record does not show either of those statutes were cited or mentioned by appellant in the trial court, nor did appellant request any relief other than "dismissal of this case," which relief is not available under article 17.151. *See Dragoo*, 96 S.W.3d at 313 (trial court's speedy trial ruling is reviewed in light of arguments, information, and evidence available to trial court at time it ruled); *Ledbetter*, 2008 WL 2190982, at *2 (same). Further, appellant does not explain, and the record does not show, how those provisions are applicable to the circumstances of this case. *See* TEX. R. APP. P. 38.1(i).

Also, as described above, appellant's arguments at his June 15, 2015 hearing included his contention that under "a federal law from 2014," the State had seventy days "in which to get me back to trial" and because that deadline was not met, his case "must be dismissed by federal law as well." On appeal, appellant repeats that argument and contends "a Federal Statute was violated." However, appellant provides no citation or further argument respecting the unspecified federal statute he contends was violated. *See* TEX. R. APP. P. 38.1(i).

Further, appellant asserts on appeal that he argued at the June 15, 2015 hearing that a "second statute," article 32.01(a) of the Texas Code of Criminal Procedure, "also prevented the State from reindicting him because the State was not ready for trial within 180 days." Article 32.01(a) of the code of criminal procedure provides,

> When a defendant has been detained in custody or held to bail for the defendant's appearance to answer any criminal accusation, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against the defendant on or before the last day of the next term of the court which is held after the defendant's commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later.

–14–

TEX. CODE CRIM. PROC. ANN. art. 32.01(a) (West Supp. 2016). However, "even if a defendant is entitled to discharge from custody under Article 32.01, that defendant is not free from subsequent prosecution." *Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001); *see* TEX. CODE CRIM. PROC. ANN. art. 15.14 (West 2015) (providing that after prosecution of defendant is dismissed under article 32.01, defendant may be "rearrested" for same criminal conduct upon presentation of indictment for that offense).

Contrary to appellant's assertion on appeal, the record does not show appellant cited or addressed article 32.01 during the June 15, 2015 hearing or made any complaint respecting presentation of an indictment. Rather, his arguments at that hearing pertained solely to the State's alleged failure to timely "get me back to trial." *See Dragoo*, 96 S.W.3d at 313; *Ledbetter*, 2008 WL 2190982, at *2. Moreover, appellant does not explain, and the record does not show, how article 32.01 would, as he contends, have "prevented the State from reindicting him." *See Ex parte Seidel*, 39 S.W.3d at 224.

As to appellant's fourth argument, the record shows any assertion of his constitutional right to a speedy trial at the June 15, 2015 hearing was limited to his counsel's statements quoted above. Even assuming without deciding those statements asserted a violation of that right, the record shows the date of that hearing was seven months from the date appellant contends he was "rearrested." On this record, we conclude appellant did not show a "presumptively prejudicial" delay that entitled him to a speedy trial analysis. *See State v. Thomas*, 453 S.W.3d 1, 5 (Tex. App.—Dallas 2014, no pet.) (seven months between defendant's arrest and trial was not "presumptively prejudicial" delay for purposes of speedy trial analysis); *State v. Jones*, Nos. 05-05-00154-CR & 05-05-00155-CR, 2005 WL 2841210, at *1 (Tex. App.—Dallas Oct. 31, 2005, pet. ref'd) (not designated for publication) (same); *Jones v. State*, 944 S.W.2d 50, 53 (Tex. App.—Texarkana 1997, pet. ref'd) (same). Additionally, after considering all of the arguments,

information, and evidence available to the trial court at the June 15, 2015 hearing as described above, we conclude the trial court did not err by denying appellant's "speedy trial motion" that was heard on that date. *See Dragoo*, 96 S.W.3d at 313; *Ledbetter*, 2008 WL 2190982, at *2.

Next, we turn to appellant's three pro se motions to quash the reindictment, which motions were heard by the trial court immediately prior to trial on August 10, 2015. Because those three motions were substantially similar, we address them together. Each of the motions was titled "Motion to Quash Indictment." Therein, appellant contended (1) the State had thirty days "from the date of summons or rearrest" to present an indictment and (2) because the State did not meet that requirement, the reindictment is "void" and must be "set-aside or dropped." None of the motions cited any authority, nor was any authority cited or described at the August 10, 2015 hearing. Further, appellant cites no authority on appeal that describes a thirty-day deadline respecting indictment.

To the extent appellant contends the motions in question assert a violation of his right to a speedy trial, those motions do not mention or address trial or the timing thereof, but rather complain specifically as to the reindictment. Further, at the August 10, 2015, hearing, appellant's counsel argued specifically that appellant "was not indicted in a timely fashion." *See Dragoo*, 96 S.W.3d at 313; *Ledbetter*, 2008 WL 2190982, at *2. Additionally, to the extent those motions can be construed to complain of a violation of article 32.01, the court of criminal appeals has stated article 32.01 "has no application once an indictment is returned." *Brooks v. State*, 990 S.W.2d 278, 285 (Tex. Crim. App. 1999); *accord Griffis v. State*, 441 S.W.3d 599, 606 (Tex. App.—San Antonio 2014, pet. ref'd). Because the reindictment in this case was returned before the date of the motions in question, any complaint pursuant to article 32.01 was moot. *See Griffis*, 441 S.W.3d at 606. On this record, we conclude the trial court did not err by denying appellant's motions to quash the reindictment.

Finally, we address the State's arguments respecting due process. As described above, in order to be entitled to relief for violation of his due process right to a speedy trial, appellant was required to show that the delay complained of (1) caused substantial prejudice to his right to a fair trial and (2) was an intentional device used to gain a tactical advantage over the accused. *Hicks*, 2015 WL 4462277, at *9. Appellant cites no portion of the record, and we have found none, supporting either requirement. Even assuming without deciding that appellant's arguments on appeal can be construed to assert a violation of his due process right to a speedy trial, we conclude appellant has not demonstrated he is entitled to such relief. *See id*.

We decide against appellant on his first issue.

### III. JURY CHARGE ERROR

#### *A. Standard of Review*

Our first duty in analyzing alleged jury charge error is to decide whether error exists. *See, e*.g*., Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Duenas v. State*, No. 05-14-00192-CR, 2015 WL 1243345, at *6 (Tex. App.—Dallas Mar. 16, 2015, no pet.) (mem. op., not designated for publication) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)). If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *See, e.g., Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Duenas*, 2015 WL 1243345, at *6 (citing *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)). "Where, as here, the defendant did not raise a timely objection to the jury instructions, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Duenas*, 2015 WL 1243345, at *6. Error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See, e.g.*, *Nava v. State*, 415 S.W.3d 289, 298 (Tex.

–17–

Crim. App. 2013); *Hubert v. State*, No. 05-12-01084-CR, 2014 WL 1022324, at \*13 (Tex. App.—Dallas Mar. 4, 2014, pet. ref'd) (not designated for publication) (citing *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). In making this determination, we examine (1) the entire charge; (2) the state of the evidence, including contested issues and weight of the evidence; (3) arguments of counsel; and (4) any other relevant information. *See, e.g., Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Villarreal*, 453 S.W.3d at 433 (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Further, we will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Id*. (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

### B. Applicable Law

Manslaughter is a second-degree felony. TEX. PENAL CODE ANN. § 19.04(b) (West 2011). Further, "if it is shown on the trial of a felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony . . . , on conviction the defendant shall be punished for a felony of the first degree." *Id*. § 12.42(b) (West Supp. 2016). The punishment range for a first-degree felony is imprisonment "for life or for any term of not more than 99 years or less than 5 years," plus an optional fine of up to $10,000. *Id*. § 12.32.

In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury, if, as in this case, the judgment contains an affirmative finding respecting a deadly weapon, the trial court is required to charge the jury, *inter alia*, as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentenced imposed or 30 years, whichever is less, *without consideration of any good conduct time the defendant may earn.*

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West Supp. 2016) (emphasis added).

### C. Application of Law to Facts

With respect to his second issue described above, appellant contends,

> The punishment instruction on appellant's parole eligibility was fundamentally erroneous and egregiously harmful. The jury was instructed that appellant could be released when he had served one-half of the sentence assessed including good time awarded. However, because there was a deadly weapon finding, good time would not be added to time-served to shorten the time for parole eligibility.

According to appellant, (1) "the jury determined appellant's sentence under the misapprehension that appellant would become eligible for release on parole substantially sooner than actually provided by law" and (2) "[i]f the jury had been properly instructed that appellant would have to serve one-half of the sentence assessed without the award of good time credits they may well have assessed a shorter sentence." The State responds that although the charge "erroneously included a mention of good conduct time affecting [appellant's] parole eligibility," no egregious harm has been shown.

The record shows the charge of court in this case stated in part, "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentenced imposed or thirty (30) years, whichever is less." (emphasis added). We agree with the parties that this parole eligibility instruction was erroneous because it did not comply with article 37.07, section 4(a). *See id.*

In considering whether appellant was egregiously harmed by this error, we look first at the jury charge as a whole. *See Arrington*, 451 S.W.3d at 840; *Duenas*, 2015 WL 1243345, at *7. In addition to the erroneous instruction described above, the jury was provided with the following statutorily required instructions explaining good conduct time and parole:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work

–19–

assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

*See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). Also, the jury was "given mitigating or curative instructions" in the paragraphs following the erroneous instruction:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by the prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See id.*; *Duenas*, 2015 WL 1243345, at *7; *Hubert*, 2014 WL 1022324, at *13–14. Finally, the trial court instructed the jury,

You are instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and are no concern of yours.

The trial court's instructions informed the jury that appellant may be released from a prison sentence early because of good conduct time or parole, but that it could not be predicted how parole law and the award of good conduct time might be applied to him. *See Duenas*, 2015 WL 1243345, at *8; *Hubert*, 2014 WL 1022324, at *14. Additionally, the jury was explicitly instructed that, although it could consider the existence of parole law and good conduct time, it could not consider the manner in which parole law or the award of good conduct might specifically be applied to appellant. *See Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004); *Duenas*, 2015 WL 1243345, at *8; *Hubert*, 2014 WL 1022324, at *14. "Absent evidence to the contrary, we presume jurors understood and followed the trial court's instructions in the jury charge." *Duenas*, 2015 WL 1243345, at *8 (citing *Taylor v. State*, 332 S.W.3d 483, 492

(Tex. Crim. App. 2011)). Further, although the trial court received two notes from the jury as described above, those notes pertained to the amount of time already served by appellant for the offense in question and whether that time served would "be subtracted from the sentence the jury imposed." "The jury did not send any notes to the trial court regarding parole law and good conduct time or its effect on appellant's length of incarceration, which might indicate confusion." *Hargest v. State*, No. 14-15-00687-CR, 2016 WL 6238291, at *3 (Tex. App.—Houston [14th Dist.] Oct. 25, 2016, no pet.) (mem. op., not designated for publication); *see Simmons v. State*, 100 S.W.3d 484, 496 (Tex. App.—Texarkana 2003, pet. ref'd) ("Even if the [jury's] note constitutes evidence the jury discussed these matters at a preliminary point, we presume the jury followed the court's instructions and, thereafter, did not consider these matters in reaching their verdict."); *Arceo v. State*, No. 05-07-00315-CR, 2008 WL 384438, at *2 (Tex. App.—Dallas Feb. 14, 2008, no pet.) (not designated for publication) (jury note respecting defendant's eligibility for deferred adjudication parole did not rebut presumption jurors properly followed instructions not to consider parole and good conduct time in assessing punishment); *Lewis v. State*, No. 07-07-0425-CR, 2008 WL 553614, at *2 (Tex. App.—Amarillo Feb. 28, 2008, no pet.) (mem. op., not designated for publication) ("while the jury asked about good time and parole in its note, that alone is not enough to rebut the presumption that it followed the trial court's directive and the instruction in the charge"). "Nothing in the record suggests that the jury discussed, considered or tried to apply (despite the judicial admonition *not* to apply) what they were told about good conduct time and parole." *Hubert*, 2014 WL 1022324, at *14 (emphasis original) (quoting *Ross*, 133 S.W.3d at 624).

Second, we consider the state of the evidence, including contested issues and the weight of the probative evidence. The record shows (1) appellant did not dispute that Liscum was killed by a shot fired from a gun appellant was holding and (2) several eyewitnesses testified as to

appellant's behavior during the incident in question. Further, in addition to the mitigating testimony by one of appellant's sons and Ealy during the punishment phase of trial, other evidence respecting punishment described numerous crimes and other negative behavior of appellant, as well as the impact of the shooting in question on the victim's friends and family. Thus, "[t]he record provides a basis for the jury's assessment of punishment without suggesting harm from the erroneous charge." *Duenas*, 2015 WL 1243345, at *8; *see Hubert*, 2014 WL 1022324, at *14.

Third, we consider the arguments of counsel. Neither party mentioned good conduct time or parole during argument or urged the jury to assess punishment based on potential good conduct time credit. *See Duenas*, 2015 WL 1243345, at *8.

Finally, we consider "any other relevant information." As described above, the penal code required imprisonment of appellant "for life or for any term of not more than 99 years or less than 5 years." During closing argument respecting punishment, (1) counsel for appellant argued that the appropriate sentence in this case is "ten years in the penitentiary" and (2) the State argued that based on the shooting in question and other acts of appellant, "this is not a case where you need to be thinking about the low end of the punishment range." Appellant asserts the jury's assessed punishment of twenty-six years was "over five times the minimum sentence available." However, that punishment was also barely over one-fourth of the maximum sentence allowed. *See Duenas*, 2015 WL 1243345, at *9 (considering severity of punishment as "other relevant information").

The record shows the factors discussed above mitigate against a finding of egregious harm. *See id.* The jury charge contained curative or mitigating instructions. *Id.* The parole instruction explained the possibility, not certainty, that appellant's prison sentence may be reduced by good conduct time or parole eligibility and, further, admonished the jury not to

consider the extent to which the parole law or good conduct time might be applied to him. *Id*. No reference to good conduct time or parole eligibility was mentioned by either party during punishment phase arguments, and there is no evidence in the record that the jury attempted to apply parole law or good conduct time when assessing appellant's sentence. *Id*. Finally, appellant did not receive the maximum sentence available. *Id*.

Under the standard applicable to showing egregious harm, we conclude the erroneous jury instruction in question did not deprive appellant of a fair and impartial trial or affect the very basis of the case, deprive him of a valuable right, or vitally affect a defensive theory. *See id*. On this record, we conclude egregious harm has not been shown. *See id*.

We decide appellant's second issue against him.

### IV. CONCLUSION

We decide against appellant on his two issues. The trial court's judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
151014F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KIELLE DROMONE MCNEAL, Appellant

No. 05-15-01014-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1500409-L.
Opinion delivered by Justice Lang, Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of November, 2016.